## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| **WILLIE LEE WHITE** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )    **Case No.: 2:07-CV-1080-MHT** |
| | ) |
| **ALABAMA PARDONS & PAROLES ,** | ) |
| **et al.** | ) |
| | ) |
| **Defendants.** | ) |

## SPECIAL REPORT

**COME NOW**, the defendants, **Alabama Governor Bob Riley, Alabama Attorney General Troy King, Classification Specialist Edna Harris, and the Alabama Department of Corrections,** and in accordance with this Honorable Court's Order of March 10, 2008, submit the following Special Report.

## PARTIES

1.    The plaintiff, Willie Lee White, AIS#140147 (Mr. White), is an Alabama Department of Corrections ("ADOC") inmate, who is presently incarcerated in the Limestone Correctional Facility (Limestone) in Harvest, Alabama.

2.    Plaintiff has named the following defendants:

a.    Bob Riley (Governor Riley), Governor of the State of Alabama

b.    Troy King (General King), Attorney General of the State of Alabama

c.    Edna Harris (Specialist Harris), Classification Specialist for the Special Unit at Limestone

d.    ADOC

## DEFENDANTS' EXHIBITS

1.    Ex. A – Affidavit of Specialist Harris

2.    Ex. B – ADOC Admin reg. no. 403, "Disciplinary Hearing Procedures for

Major Rule Violations"

3.    Ex. C - ADOC Admin reg. no. 400, "Classification of Inmates"

## PLAINTIFF'S ALLEGATIONS AND DEMANDS

Plaintiff alleges in his complaint that:

1.    The defendants conspired to politically predispose him of any proper

discretionary parole review.

2.    Specialist Harris placed erroneous information in his file in an attempt to

have Mr. White's parole denied.

Plaintiff seeks declaratory and injunctive relief from Alabama's

discriminatory parole procedures and an order granting Mr. White an immediate

parole hearing under statutory and administrative laws in place in 1992.

## DEFENDANTS' RESPONSE

1.    Defendants deny conspiring to deny plaintiff parole.

2.    Mr. White's vague and conclusory allegations of conspiracy do not

support a § 1983 claim.

3.    Defendants named in their official capacities are immune by virtue of

sovereign immunity.

4.     Defendants named in their individual capacities are immune by virtue of qualified immunity.

5.     Plaintiff lacks standing to bring this suit against the defendants in their individual capacities.

6.     Defendants deny violating plaintiff's constitutional rights.

7.     Defendants request that this Honorable Court consider this report as a Motion for Summary Judgment at such time when this Honorable Court sees fit.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings, affidavits and documents submitted to the court show that there is no genuine issue of material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986).  Once the movant has established that there is no genuine issue, then the burden shifts to the non-movant to rebut the movant's prima facie showing.  Celotex Corp. v. Catrett, 477 U.S. 323 (1986).  Unless the non-movant can submit substantial evidence that a genuine issue of material fact does exist, the movant is entitled to summary judgment.  Id.  Merely submitting restated allegations of the complaint is not sufficient to meet the non-movant's burden.  Morisky v. Broward County, 80 F.3d. 445, 448-449 (11th Cir. 1996).  This case is ripe for summary judgment because there is no genuine issue of fact to plaintiff's claims and the defendants are entitled to judgment as a matter of law.

## ARGUMENT OF FACT AND LAW

**Claims against the ADOC**

Mr. White's complaint alleges nothing against the ADOC. Therefore, Mr. White has failed to state a claim against the ADOC. ADOC is due to be dismissed.

The ADOC does not waive any defense should this Court determine that the plaintiff did state a claim against the ADOC, and did not simply list the "Alabama Department of Corrections," as a part of Specialist Harris' title.

**Claims against Governor Riley and General King**

Mr. White's allegations of conspiracy are without merit and defendants are due to be dismissed from this case. Mr. White alleges that the defendants conspired to deny him parole, based on his violent offense. Mr. White states that the Board of Pardons and Paroles (Parole Board) contacts the Governor's Office and the Office of the Attorney General prior to Parole Board hearings. Mr. White states that said offices often speak against parole for violent offenders through the media. Nowhere in his complaint does Mr. White allege that either Governor Riley or General King specifically spoke out against Mr. White being granted parole. Mr. White offers nothing other than vague and conclusory allegations of conspiracy, which cannot support a §1983 claim. Fullman v. Graddick, 739 F.2d 553, 556-557 (11th Cir. 1984). See also, Brown v. Alabama Board of Pardons and Paroles, et. al., 2:07-CV-1123-MHT (WO) ___ So.2d ____, (Ala. M.D. 2008) (unpublished) (Defendants Troy King and Bob Riley were dismissed from suit prior to service because plaintiff's allegations that "'Alabama's unconstitutional political policy orchestrated by Pardon & Parole Board members…through collusion, conspiracy with co-

defendants Bob Riley [and] Troy King' which predisposed him to an inability to receive fair consideration for parole," did not support a conspiracy claim under § 1983 because they were vague and conclusory.); Charest v. Alabama Board of Pardons and Paroles, et. al., 2:07-CV-984-MHT (WO) ___ So.2d ____, (Ala. M.D. 2008) (unpublished) (Defendants Troy King and Bob Riley were dismissed from suit prior to service because plaintiff's allegations that "'Alabama's unconstitutional political policy orchestrated by Pardon & Parole Board members…through collusion, conspiracy with co-defendants Bob Riley [and] Troy King' which predisposed him to an inability to receive fair consideration for parole," did not support a conspiracy claim under § 1983 because they were vague and conclusory.)[1]

**Claims against Edna Harris**

Mr. White's conclusory claims against Specialist Harris are completely unfounded. Specialist Harris denies telling Mr. White that she would see to it that he stayed at Limestone forever because Mr. White broke the jaw of her head tutor on March 3, 2002. (Ex. A. pp. 1 & 20.)

Conversely, Mr. White's classification progress reports have noted a steady improvement since 2002. On March 13, 2007 Mr. White was found guilty of assault. Id. at 8, 17-19. Due to the severity of the assault, Mr. White was re-classified to "Maximum" custody on March 27, 2002. Id. at 8. Mr. White did not like his new classification, and felt it was unjust that he was placed in maximum custody after beating a man so badly that he spent twenty-one (21) days in the HCU. Id. at 20-22. On March 6, 2003, Mr. White was re-classified to "Close custody." Id. at 9. He was not happy with that classification

---

[1] These cases are listed in plaintiff's complaint.

either.  Id. at 25-26.  On March 15, 2004, Mr. White's classification progress review form notes Mr. White was re-classified to medium custody, and although, "[h]e has had a minor infraction since his [contracted] release [to special unit population], there were "[n]o major problems since his release."  Id. at 10.  On June 25, 2005, despite being involved in an assault without a weapon, Mr. White's classification progress review form notes Mr. White's custody remained "medium."  Id. at 11.  On June 12, 2006, Mr. White's classification progress review form notes improved behavior, and encourages him to "[k]eep up the good work."  Id. at 12.  On September 5, 2007, Mr. White's classification progress review form notes that his institutional adjustment has improved.  Id. at 12.

Finally, contrary to Mr. White's allegations, Specialist Harris reported to the Parole Board on February 17, 2006 that Mr. White's job performance was good, and stated, "[Mr. White's] institutional behavior has greatly improved."  Id. at 31.  ADOC rules mandate that disciplinary actions be placed in inmates' institutional files. (Ex. B, p. 8, ¶ F.)  Specialist Harris followed all procedures mandated by the ADOC when classifying Mr. White.  (Ex. C, p. 3, ¶ B.)  Mr. White's completely unsupported claims against Specialist Harris are due to be dismissed.

## CONCLUSION

Based on the foregoing, defendants respectfully request that this court consider treating this Special Report as a Motion for Summary Judgment, and enter judgment in favor of the defendants.

Respectfully submitted on this 13th day of March, 2008.

> TROY KING
> ATTORNEY GENERAL
> KIN047


> s/ J. MATT BLEDSOE
> J. Matt Bledsoe (BLE 006)
> ASSISTANT ATTORNEY GENERAL

OF COUNSEL:

OFFICE OF THE ATTORNEY GENERAL
11 South Union Street
Montgomery, AL  36130
(334) 242-7443
(334) 242-2433 (fax)


## CERTIFICATE OF SERVICE

I hereby certify that I have on this 9th day of April, 2008, electronically filed the foregoing with the Clerk of the Court, using the CM/ECF Filing System, and that I have further served a copy of the foregoing upon the plaintiff, by placing same in the United States Mail, postage prepaid and properly addressed as follows:


> Willie White, #140147
> Limestone Correctional Facility
> 28779 Nick Davis Road
> Harvest, AL  35749


> s/ J. MATT BLEDSOE
> OF COUNSEL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| WILLIE LEE WHITE, #140147 | ) |
| | ) |
|     Plaintiff | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 2:07-CV-1080-MHT |
| | ) |
| ALABAMA PARDONS AND PAROLES, et al, | ) |
| | ) |
|     Defendants. | ) |

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said

County and State of Alabama at large, personally appeared one Edna Harris, who

being known to me and being by me first duly sworn, deposes and says on oath as

follows:

My name is Edna Harris, and I am presently employed as the Classification

Supervisor, with the Alabama Department of Corrections, Limestone Correctional

Facility Harvest, Alabama. I am over nineteen (19) years of age.

Inmate Willie Lee White, AIS# 140147, makes his claim of "Denial of Due

Process; Cruel & Unusual Punishment –Equal Protection Violation {"Defendant Edna

Harris made egregious threats, subversive acts"}, specifically that I made a statement to

Inmate White that I would "mess you up, to where you'll never get out of prison... you'll

remain at Limestone forever." Inmate White goes on to claim that "erroneous subversive

facts" were entered into his institutional file.

As Inmate White's classification specialist at the time, in his allegation, I have

EXHIBIT

A

tabbies

never made any such statement to Inmate White that I, or anyone, would "mess him up." As the classification specialist for the inmates assigned to the Special Unit at Limestone — where Inmate White has been assigned since his return to the Alabama Department of Corrections in 1996 – I am responsible for paperwork entered into the institutional files. The number of Special Unit inmates at Limestone numbers well over 250. As a criminal justice professional, and classification specialist, I do not have the time nor desire to discriminate against any inmate at Limestone Correctional Facility or anywhere within the ADOC.

Inmate Willie White is currently incarcerated on a LIFE sentence for Rape II. He was convicted of Rape II on 10/21/1996. His victim was more than 12 years of age, but less than 16, and the victim was found to be 5 months pregnant in June 1992 when the Department of Human Resources became involved. Inmate White's prior record earned him the Habitual Offender status which resulted in his judge sentencing him to the LIFE sentence. Since his return to ADOC in 1996, he has three major rule violations for being in an unauthorized area, assault on another inmate, and fighting without a weapon. Inmate White's institutional record is well-documented as to Inmate White's volatile personality and violent behavior. There is no reason for any staff member to claim that they would "mess up" Inmate White, because he has done that for himself with his negative behavior.

Particularly concerning his assault on another inmate, Inmate White beat up another inmate on 3/3/02, resulting in the victim's jaw being broken and having to be transferred to the medical unit at the Receiving and Classification Center at Kilby Correctional Facility to have the medical procedures completed. Inmate White wrote a

letter to his classification specialist, attempting to minimize his assaultive behavior. In this letter, he wrote, first explaining that he did not mean to hurt the other inmate; he was just stressed and the other inmate 'just made him madder.' After rationalizing his behavior, Inmate White specifically references the then impending classification action of increasing his custody and placing him in segregation for his assaultive behavior.

Inmate White does not think he was in the wrong for his actions and in his letters to Warden Mitchem, the institutional psychological associate, classification specialist and supervisor, Inmate White states that classification "wants to do all this to me and will, when I go up for parole in three years I will still be in the prison system because my jacket will(sic) be messed up now with that written in it no way will I make it." Inmate White wrote another letter to Mr. Rickey Smith, Psychological Associate that is included to show Inmate White's paranoid allusions to ADOC staff having personal vendettas against him.

Classification staff is not privy to parole board decisions as to why any inmate is approved or denied parole. A Warden's Report was prepared for submission to the Parole Board for consideration in their review of Inmate White. The report I prepared is a positive report considering his persistent behavior problems. The ADOC Classification objective is to provide consistent, efficient, dependable, and constitutionally acceptable decisions concerning offenders during their incarceration with regard to custody, security level, institutional placement, work assignment, education and training, counseling, guidance, therapy, and other special programs in accordance with the needs and resources of the Department and the needs and abilities of the offenders.

Inmate White is a dangerous sexual deviant. His crimes and convictions are a

matter of record. He falls under the purview of Megan's Law. The sentence he received was intended not only as punishment, but to remove this dangerous criminal from free society for a significant period of time. Whether he assaulted an inmate tutor, or any other inmate that happened to be so unlucky as to be in his line of fire when he lets his explosive personality loose, is academic in terms of the identification, management, or classification of Inmate White during the term of this or any subsequent incarceration. His continuous and consistent aggressive and manipulative behavior existed well before he first lodged allegations of discrimination in 2002 when he committed his assault on another inmate.

Per classification criteria, inmates with a sex offense conviction are not authorized custody less than medium and no security level less than 4. Special Unit inmates are assigned only to Limestone Correctional Facility. These two facts are determined by legislation and executive-level decisions. Therefore, Inmate White has taken a fact of his classification and facility management and twisted it to suit his delusions of persecution. The ADOC Classification Manual is the official source and authority for all ADOC classification transactions in keeping with administrative regulations and ADOC policies that have bearing on the classification function. The manual provides guidelines for classification staff to use professional judgment and experience for classification decision-making. To the best of my knowledge, classification procedures are applied uniformly throughout the ADOC without regard to race, creed, sex, or national origin. I also state that an inmate has no right to any specific classification decision regarding custody, placement, or programs. Therefore, I deny any violation of Inmate White's rights, Constitutional or otherwise.

To my knowledge, the above related facts are the entirety of my involvement with Inmate White concerning the allegations on which his complaint is based. I have not violated any of Inmate White's Constitutional Rights.

_____

EDNA HARRIS

STATE OF ALABAMA)

LIIMESTONE COUNTY)

SWORN TO AND SUBSCRIBED BEFORE ME AND GIVEN UNDER MY HAND AND OFFICIAL SEAL THIS THE 27ᵗʰ DAY OF _____March_____, 2008.

_____

NOTARY PUBLIC

My commission expires ___11-16-2012___

ALABAMA DEPARTMENT OF CORRECTIONS - PROGRESS REVIEW FORM -    MARCH  27, 2002
(COU122)

AIS #: 00140167S    SSN: 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 RACE/SEX:  B/M    DATE OF BIRTH: 09/09/1962
NAME: WHITE, WILLIE LEE        CUSTODY:    MED9    SECURITY LEVEL: 4
INST: LIMESTONE INFIRMARY        TIME SRVD: 06Y07M22 LAST DISC: 03 13 2002
CRME: OFFENSES - OTHER (CLASS "B" FE MIN REL DT: 99/99/9999 ACTIVE DET:  0

DISC: ASSAULT ON ANOTHER INMATE    PRL CONS:    08/01/2005 EDUCAT LEV: 12

WL/PGM:                BRIM OCCUP: GUARD WATCHMAN

RECOMMENDED INSTITUTION: Limestone Correctional A RECOMMENDED CUSTODY: Maximum
        RECLASS:    Inmate White is being reclassed due to his action
JUSTIFICATION:

on March 3, 2002, in which he assaulted Inmate Charles Nelson with a

broom handle.  This assaulte resulted in Inmate Nelson having to be

confine to HCU for twenty-one (21) days for treatment to his face.

Inmate White assault caused  lacerations to Nelson's face, specifically

the nostrils and gums.  Inmate White was found guilty  on the disciplinary

for assault.  Because of his senseless actions and in accordance with

the Deparment of Corrections' Classification criteria established for

inmates that are found to be guilty of assault with a weapon As    *Enemy LCF*
                                    *Special Unit*
                                    *population*
I CERTIFY ENEMY LIST WAS REVIEWED AND UPDATED:    5x 3ETPC    APP. S/L:

_____ 3/28/02    _____ 3 28 02
CLASSIFICATION SPECIALIST        DATE    WARDEN OR DESIGNEE    DATE

_____ 3/28/02    _____ 3-28-02
PSYCHOLOGIST/PSYCHOLOGIST'S ASSOC.    DATE    CLASSIFICATION COORDINATOR DATE

CENTRAL REVIEW BOARD ACTION:

__ APPROVED    __ DENIED; DIVERTED TO: _____    REASONS: _____

                    _____    _____
                    CRB MEMBER        DATE

__ APPROVED    __ DENIED; DIVERTED TO: _____    REASONS: _____

                    _____    _____
                    CRB MEMBER        DATE

__ APPROVED    __ DENIED; DIVERTED TO: _____    REASONS: _____

                    _____    _____
                    CRB MEMBER        DATE

FINAL DECISION: INST: LCF    CUSTODY MAX    DATE    3/28/02

DATE INMATE INFORMED: _____    INMATE'S SIGNATURE: Willie White

## PROGRESS REVIEW
## CONTINUATION SHEET

INMATE NAME: White, Willie Lee          AIS# 140147A
CLASSIFICATION SPECIALIST: E. Harris
                    DATE: March 28, 2007

_____

recommendation is being made to the reclass team to approve

an increase to Inmate White's custody from medium to

Maximum. After the completion of his disciplinary segregation

time Inmate White be reviewed for Admin. Segregation.

Inmate White can not return to Dorm 16 after his seg. time

due to claimed enemy. He will continue to serve a life

sentence for Rape I.

_____

_____

_____

**DISSENTING COMMENTS:** _____

_____

_____

_____

**DNA:** _____          **ADOL:** _____

**MENTAL HEALTH WORKSHOPS:** 1. _____     **SKILLS:** _____
                              2. _____     _____
                              3. _____

ALABAMA DEPARTMENT OF CORRECTIONS
24 HOUR ADVANCE NOTIFICATION
OF PENDING RECLASSIFICATION

| TO: White, Willie Lee | 140147A | B/M | 3/27/02 |
|---|---|---|---|
| Name | AIS# | R/S | DATE |

Notice of Reclassification:     This is to inform you that on the 28th day of March 2002
you will meet a reclassification team to consider you for a change in custody and/or institutional assignment because:

On March 3, 2002, you assaulted Inmate Charles Nelson with a weapon

thereby causing serious injuries to his face/arms. On March 13, 2002

you were found guilty on a disciplinary for the assault to Inmate Nelson

Because of your negative (violent) action you will meet with a review

team to review your present status for a custody upgrade to MAXIMUM .

This classification action is in accordance with The Department of

Corrections' Classification Manual, Criteria for violent assaultive Inmates

This is not a disciplinary hearing.    A reclassification team will review this matter and recommend any changes, if needed, in your
current custody level, security level, and/or placement.   At the reclassification meeting, you will be given opportunity to be heard,
to present witnesses, and to present any documentary evidence which you may have.

NAME OF SERVING OFFICER _____     DATE 3-27-2002     WITNESS _____

I UNDERSTAND THAT THIS IS MY NOTICE OF A RECLASSIFICATION MEETING TO DETERMINE CHANGES IN MY
CUSTODY LEVEL, SECURITY LEVEL AND/OR PLACEMENT.  I HAVE BEEN GIVEN THE OPPORTUNITY  TO CALL
WITNESSES IN MY BEHALF AND HAVE RECEIVED A COPY OF THIS NOTICE ON ___27__ day of
MARCH 2002 AT 10:00 AM (time).

Willie White     140147
Inmate's Signature     AIS#

Witnesses Requested by Inmate:

JEFFERY HOLT

No Witnesses Requested: _____

DISTRIBUTION  INMATE/ INSTITUTIONAL FILE/ CENTRAL FILE

ALABAMA DEPARTMENT OF CORRECTIONS - PROGRESS REVIEW FORM    MARCH    6, 2003
(COU122)

AIS/#: 00140147S    SSN: 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    RACE/SEX: B/M    DATE OF BIRTH: 09/09/1962
NAME: WHITE, WILLIE LEE                CUSTODY:    MAX9    SECURITY LEVEL: 5
INST: LIMESTONE DORM 16               TIME SRVD: 07Y07M03 LAST DISC: 03 13 2002
CRME: OFFENSES - OTHER (CLASS "B" FE MIN REL DT: 99/99/9999 ACTIVE DET:    0

DISC: ASSAULT ON ANOTHER INMATE        PRL CONS:    08/01/2005 EDUCAT LEV: 12

WL/PGM: _____        PRIM OCCUP: GUARD, WATCHMAN

RECOMMENDED INSTITUTION: LCF-Special Unit _____ RECOMMENDED CUSTODY: CLOSE

JUSTIFICATION: Annual review with recommendations for reduction in

custody to Close. Inmate was reclassed to Maximum 3/28/02 as a result

of his behavior in which he assaulted another inmateresulting in serious

injury (lacerations to face, nostrils, & gums) requiring medical treatment.

Inmate has had no negative actions since that time. There is no indication

of completing any mental health workshops since being in single cell.

_____

Last review: 3/02// NSDL//DNA:3/5/98//Enemies:LCF-Special Unit Population.

I CERTIFY ENEMY LIST WAS REVIEWED AND UPDATED:            APP. S/L:
                                                          3.20.03
CLASSIFICATION SPECIALIST    3/20/03  DATE    WARDEN OR DESIGNEE    DATE

PSYCHOLOGIST/PSYCHOLOGIST'S ASSOC.    DATE        CLASSIFICATION COORDINATOR DATE

                        CENTRAL REVIEW BOARD ACTION

APPROVED ___ DENIED; DIVERTED TO: _____    REASONS: _____

_____              _____
                                           CRB MEMBER            DATE
APPROVED ___ DENIED; DIVERTED TO: _____    REASONS: _____

                                           _____
                                           CRB MEMBER            DATE
APPROVED ___ DENIED; DIVERTED TO: _____    REASONS: _____

                                           _____
LCF Special Unit                           CRB MEMBER            DATE
S.C.                          Close
FINAL DECISION: INST  S.C.  CUSTODY  Close  DATE    3-20-03
DATE INMATE INFORMED: 3/20/03  INMATE'S SIGNATURE: _____

                                                   3-20-03

ALABAMA DEPARTMENT OF CORRECTIONS - PROGRESS REVIEW FORM    MARCH   15, 2004
                                            (COU122)
AIS #: 001401475    SSN: 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   RACE/SEX:  B/M    DATE OF BIRTH: 09/09/1962
NAME: WHITE, WILLIE LEE                  CUSTODY:  MED9   SECURITY LEVEL: 5
INST: LIMESTONE DORM 16                  TIME SRVD:  08Y07M13 LAST DISC: 03 13 2002
CRME: OFFENSES - OTHER (CLASS "B" FE MIN REL DT: 99/99/9999 ACTIVE DET:  0

DISC: ASSAULT ON ANOTHER INMATE       PRI CONS:  08/01/2005 EDUCAT LEV: 12

WL/PGM:                                PRIM OCCUP: GUARD, WATCHMAN

RECOMMENDED INSTITUTION:      Limestone Special Unit              RECOMMENDED CUSTODY:      Med

JUSTIFICATION:      White was released to Special units population on

a " Behavioral Contract 1/9/2004.   He has had a minor infraction since his

release but was allowed to continue on his contract.   He has serve

8 years on his life sentence.  No program participation since 1999.

Remain assigned to Limestone Special Unit immedium custody.  No

major problems since his released.

_____

_____

_____

_____

_____

_____

CLASS LIST HAS REVIEWED AND UPDATED:          WDP. S/                6/16/04

_____    _____
PSYCHOLOGIST/PSYCHOLOGIST'S ASSOC.   DATE      CLASSIFICATION COORDINATOR DATE

                    CENTRAL REVIEW BOARD ACTION

APPROVED    DENIED; DIVERTED TO:          REASONS:

_____

                                          CRB MEMBER              DATE
APPROVED    DENIED; DIVERTED TO:          REASONS:

_____

                                          CRB MEMBER              DATE
APPROVED    DENIED; DIVERTED TO:          REASONS:

_____

              Limestone Spec. Unit   CRB MEMBER               DATE
FINAL DECISION: INST         CUSTODY  Med   DATE
DATE INMATE INFORMED:              INMATE'S SIGNATURE

ALABAMA DEPARTMENT OF CORRECTIONS - PROGRESS REVIEW FORM - JUNE  23, 2005
(COU122)
AIS #: 00103478    SSN: 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  RACE/SEX:  B/M  DATE OF BIRTH: 09/09/1962
NAME: WHITE, WILLIE LEE    CUSTODY:  MED9  SECURITY LEVEL: 5
INST: LIMESTONE SPECIAL UNIT    TIME SRVD:  09Y10M22 LAST DISC: 05 27 2005
CRME: OFFENSES - OTHER (CLASS B FEL) MIN REL DT: 99/99/9999 ACTIVE DET:  0

DISC: FIGHTING WITHOUT A WEAPON    PRL CONS:  08/01/2005 EDUCAT LEVE 12

AL/PGM:    PRIM OCCUP: GUARD, WATCHMAN

RECOMMENDED INSTITUTION:    Limestone  Spec. Unit    RECOMMENDED CUSTODY:    Med

Since his released from Seg. White has  tried to maintain
a good record. He let the pressure get to him and was involved in
... of w/o weapon  in May.  Remain assigned to Limestone Spec.
... ium custody.  Recent disciplinary is a factor and not
... custody reduction.

... HAS REVIEWED AND ...

CENTRAL REVIEW BOARD REVIEW

... DENIED; DIVERTED TO:    REASONS:

... APPROVED    DENIED; DIVERTED TO:    REASONS:
CRB MEMBER    DATE

... APPROVED    DENIED; DIVERTED TO:    REASONS:
CRB MEMBER    DATE

Limestone  Spec.  Unit    CRB MEMBER    DATE
FINAL DECISION: INST    CUSTODY    MedArs
... INMATE INFORMED:    INMATE'S SIGNATURE

White v Ala. P&P et al.
0011

ALABAMA DEPARTMENT OF CORRECTIONS – PROGRESS REVIEW FORM –    JUNE    30, 2006
(COU122)
AIS #: 001401479    SSN: 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  RACE/SEX: B/M    DATE OF BIRTH: 09/09/1962
NAME: WHITE, WILLIE LEE         CUSTODY:    MED9    SECURITY LEVEL: 5
INST: LIMESTONE SPECIAL UNIT        TIME SRVD:  10Y10M29 LAST DISC: 05 27 2005
CRME: OFFENSES – OTHER (CLASS B FEL) MIN REL DT: 99/99/9999 ACTIVE DET:   0

DISC: FIGHTING WITHOUT A WEAPON    PRL CONS:   03/01/2009 EDUCAT LEV: 12

WL/PGM:_____    PRIM OCCUP:GUARD,WATCHMAN
RECOMMENDED INSTITUTION:     Limestone SPec. Unit    RECOMMENDED CUSTODY:    med

JUSTIFICATION:    Improved behavior noted.  Last negative behavior recorded
in 2005.  He has served 10 years on his life snetnace with a total
of 3 major disciplinaries.    Keep up the good work. DO not get
in any trouble you are doing good.
_____
_____
_____
_____

I CERTIFY ENEMY LIST WAS REVIEWED AND UPDATED: _____    APP S/L:_____

_____    _____    _____    _____
CLASSIFICATION SPECIALIST    DATE    WARDEN OR DESIGNEE    DATE

_____    _____    _____    _____
PSYCHOLOGIST/PSYCHOLOGIST'S ASSOC.    DATE    CLASSIFICATION COORDINATOR DATE

CENTRAL REVIEW BOARD ACTION

___ APPROVED  ___ DENIED; DIVERTED TO: _____   REASONS: _____

_____    _____
CRB MEMBER    DATE

___ APPROVED  ___ DENIED; DIVERTED TO: _____   REASONS: _____

_____    _____
CRB MEMBER    DATE

___ APPROVED  ___ DENIED; DIVERTED TO: _____   REASONS: _____

_____    _____
CRB MEMBER    DATE

:Limestone SPec. Unit
FINAL DECISION: INST _____ CUSTODY   med  DATE   7-7-06
DATE INMATE INFORMED: _____ INMATE'S SIGNATURE: x Willie White

White v Ala. P&P et al.
0012

ALABAMA DEPARTMENT OF CORRECTIONS – PROGRESS REVIEW FORM – SEPTEMBER 6, 2007

(COU122)

AIS #: 00140147S    SSN: 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  RACE/SEX:  B/M   DATE OF BIRTH: 09/09/1962
NAME: WHITE, WILLIE LEE                CUSTODY:   MED9  SECURITY LEVEL: 5
INST: LIMESTONE SPECIAL UNIT           TIME SRVD:  12Y01M05 LAST DISC: 05 27 2005
CRME: OFFENSES – OTHER (CLASS B FEL)  MIN REL DT: 99/99/9999 ACTIVE DET:  0

DISC: FIGHTING WITHOUT A WEAPON        PRL CONS:  03/01/2009 EDUCAT LEV: 12

WL/PGM:  __C DOrm Cleaner__        PRIM OCCUP: GUARD, WATCHMAN
                            Limestone Spec. Unit
RECOMMENDED INSTITUTION: _____        RECOMMENDED CUSTODY:    med
                improved institution adjustment noted.  No negative behavior
JUSTIFICATION:
  documented since 2005.  He has received several good to excellent

work reports.  Remain @ Limestone Spec. Unit

_____

_____

_____

_____

_____

I CERTIFY ENEMY LIST WAS REVIEWED AND UPDATED: _____   APP./S/LY
                                                                 9-30-07
CLASSIFICATION SPECIALIST _____ 9/ DATE    WARDEN OR DESIGNEE    DATE

PSYCHOLOGIST/PSYCHOLOGIST'S ASSOC.   DATE        CLASSIFICATION COORDINATOR DATE

                        CENTRAL REVIEW BOARD ACTION

____ APPROVED ____ DENIED; DIVERTED TO: _____    REASONS: _____

_____                                  _____

                                                 CRB MEMBER            DATE

____ APPROVED ____ DENIED; DIVERTED TO: _____    REASONS: _____

                                                 _____

                                                 CRB MEMBER            DATE

____ APPROVED ____ DENIED; DIVERTED TO: _____    REASONS: _____

Limestone Sepc. Unit                             CRB MEMBER  9-30-07   DATE

FINAL DECISION: INST _____ CUSTODY __med__ DATE _____

DATE INMATE INFORMED: _____ INMATE'S SIGNATURE: _Willie L White_

White v Ala. P&P et al.
0013



**STATE OF ALABAMA**
**DEPARTMENT OF CORRECTIONS**
**LIMESTONE CORRECTIONAL FACILITY**

FOB JAMES, JR.
GOVERNOR

JOE S. HOPPER
COMMISSIONER

## M E M O R A N D U M

DATE: ___June 19, 1998___

FROM: __Sgt. Rene' Mason__ *RM*

TO:    Warden Ralph Hooks
       Warden David Wise
       Mr. Jim Hayes, Classification

RE:    Peace Agreement

This is to acknowledge that we have been orally reprimanded on this date
concerning our disagreement. By our signature(s) we relieve any and all
Department of Corrections Officials of any liabilities and damages. We
acknowledge that our problem(s) have been worked out and that we can live
at this institution without violence existing between us. I (we) under-
stand that even though I (we) have signed this form, disciplinary action
may still be taken against us. This statement is made of my (our) own
free will, no threats or promises from anyone.

| NAME (print) | AIS# | INMATE'S SIGNATURE | DATE |
|---|---|---|---|
| Sylvester Pace | 192410 | *J. Sylvester Pace* | 6|19|98 |
| Willie White | 140147 | *Willie White* | 6|19|98 |

CIRCUMSTANCES: Inmates Pace and White were involved in a homosexual relation-
ship. Inmate Pace ended the relationship. Inmate White has been "stalking"
Inmate Pace. Inmate Pace and Inmate White acknowledge the relationship is
over and can live together as "friends" without violence between them.

WITNESS: *Sgt. Rene' Mason*    DATE: 6|19|98    TIME: 10:45 Am

CC:  Classification(one for each inmate), File, Shift File.

White v Ala. P&P et al.
0014

STATE OF ALABAMA
BOARD OF CORRECTIONS
INSTITUTIONAL INCIDENT REPORT

| 1. Institution: Limestone Correctional Facility | 2. Date: October 4, 1999 | 3. Time: 9:35 AM | 4. Incident Number: LCF-99-1024 |
|---|---|---|---|

| 5. Location Where Incident Occurred: Sergeant's Office Dormitory #16 | 6. Type of Incident: Request for Protective Custody |
|---|---|

| 7. Time Incident Reported: 9:38 AM | 8. Who Received Report: Lieutenant Patrick Robinson |
|---|---|

9 Victim:

a. _____ N/A _____        No. _____
   (type full name)

b. _____        No. _____
   (type full name)

| 10. Suspects: | | 11. Witnesses: | |
|---|---|---|---|
| a. Mark Partain | No. W/166286 | a. _____ | No. _____ |
| b. Terry Shelby | No. B/193121 | b. _____ | No. _____ |
| c. Joe Campbell | No. W/152808 | c. N/A | No. _____ |
| d. Willie White | No. B/140147 | d. _____ | No. _____ |
| e. _____ | No. _____ | e. _____ | No. _____ |
| | | f. _____ | No. _____ |
| | | g. _____ | No. _____ |

Physical Evidence:

12. Type of Evidence:        N/A

13. Description of Evidence:        N/A

14. Chain of Evidence:        N/A
a. _____
b. _____
c. _____
d. _____

15. Narrative Summary: On October 4, 1999, at approximately 9:35 AM, Inmate Mark Partain, W/166286, approached Sergeant Roy Dunaway requesting that he be placed into protective custody.  Inmate Partain stated that Inmates Joe Campbell, W/152808, Willie White, B/140147, and Terry Shelby, B/193121, were harassing him about homosexual activities and that Inmate Campbell had threatened Inmate Partain because he had gone to Officer Edward Martin with his problems.  Sergeant Dunaway asked Inmate Partain if he had been harmed.  Inmate Partain stated "No" but he felt that he would get into a fight with the before named inmates because they would not leave him alone.  Inmate Partain

Distribution:     Original to I & I Division
                  Copy to Institutional File
                  Copy to Central Records File          ADOC Form 601 Revised 4-6-99

Annex A (Page 1 of 2)

7

AR 302-April 6, 1999

White v Ala. P&P et al.
0015



## STATE OF ALABAMA
# DEPARTMENT OF CORRECTIONS

LIMESTONE CORRECTIONAL FACILITY
P.O. BOX 66
CAPSHAW, ALABAMA 35742

<u>MEMORANDUM</u>

DATE: 9/17/01

FROM:

TO:      Warden Ralph Hooks
         Warden David Wise
         Mr. Jim Hayes, Classification

RE:      Peace Agreement

This is to acknowledge that we have been orally reprimanded on this date concerning our
disagreement.  By our signature(s), we relieve any and all Department of Corrections
Officials of any liabilities and damages.  We acknowledge that our problem(s) have been
worked out and that we can live at this institution without violence existing between
us.  I (we) understand that even though I (we) have signed this form, disciplinary action
may still be taken against us.  This statement is made of my (our) own free will, no
threats or promises from anyone.

| NAME (print) | AIS# | INMATE'S SIGNATURE | DATE |
|---|---|---|---|
| Willie White | B/140147 | Willie White | 09-17-200 |
| Anthony Thomas | B/134370 | Anthony Thomas | 9-17-200 |

CIRCUMSTANCES:

On 9-17-01 at approximately 6:55 PM, Inmates Willie
White B/140147 & Anthony Thomas B/134370 had a
verbal altercation. Both inmates were counseled by Sgt.
Shedd and were told to avoid any further confrontations.

WITNESS: Floyd Smith, COI     DATE: 9-17-01   TIME: 6:55 PM

cc:  Classification (one for each inmate)
     File
     Shift File

White v Ala. P&P et al.
0016

STATE OF ALABAMA
BOARD OF CORRECTIONS

INSTITUTIONAL INCIDENT REPORT

N601
D of C
DOC No. 601 (REV. 4/81)

| 1. Institution: Limestone Correctional Facility | 2. Date: March 3, 2002 | 3. Time: 7:30 PM | 4. Incident Number LCF-02-0099 |
|---|---|---|---|

| 5. Location Where Incident Occurred: Dormitory #16. Law Library | 6. Type of Incident: RV #31- Assault on Another Inmate/ After-Dark Medical Transfer. |
|---|---|

| 7. Time Incident Reported: 7:40 PM | 8. Who Received Report: Sergeant James Shedd |
|---|---|

| 9. Victim: | a. | Charles Nelson | B/M | No. 214074 |
|---|---|---|---|---|
| | b. | | | No. |

| 10. Suspects: | | | | 11. Witnesses: | a. | Terry P. Hardy | B/M | No. 173826 |
|---|---|---|---|---|---|---|---|---|
| | | | | | b. | Joseph Jordan | B/M | No. 166337 |
| a. | Willie White | B/M | No. 140147 | | c. | Kenneth Brown | B/M | No. 172592 |
| b. | | | No. | | d. | | | No. |
| c. | | | No. | | e. | | | No. |
| d. | | | No. | | f. | | | No. |
| e. | | | No. | | g. | | | No. |

Physical Evidence:
12. Type of Evidence:    A  Wooden Broom Handle

13. Description of Evidence    A Wooden Broom Handle approximately 4 1/2 feet in length and 1" in diameter that appears to have a small amount of blood on one end

14. Chain of Evidence:
a.    Dormitory #16 Supply Closet
b.    Officer Robert Nichols
c.    Dormitory #16 Administration Bulding
d.    I & I Evidence Box

Narrative Summary: On March 3, 2002, at approximately 7:30 PM, Officer Robert Nichols was conducting pill call in the kitchen area of Dormitory #16. Officer Nichols was approached by Inmate Terry P. Hardy, B/M 173826, and informed that Officer Nichols needed to report to the Law Library of Dormitory #16, that someone was hurt and there was a lot of blood. Officer Nichols instructed Officer Fred Cato to continue the pill call in Dormitory #16, while Officer Nichols went to investigate the statement made by Inmate Hardy. As Officer Nichols was in route to the Law Library, Officer Nichols noticed several inmates walking with Inmate Charles Nelson, B 214074, holding a blood stained T-Shirt to his mouth. Officer Nichols stopped Inmate Nelson and asked Inmate Nelson what had happened to him. Inmate Nelson stated, "Inmate Willie White (B/140147) hit me with a stick." Officer Nichols escorted Inmate Nelson into the kitchen area of Dormitory #16, and placed Inmate Nelson into the custody of Officer Cato. Officer Nichols exited the kitchen and proceeded to the Law Library in

DISTRIBUTION:    ORIGINAL  Investigation and Inspection Division
COPY to Deputy Commissioner, Institutions
COPY to Institutional File
COPY to Central Records File

White v Ala. P&P et al.
0017

| CONTINUATION SHEET | |
|---|---|
| | Incident Number: |
| | Type of Incident: RV#31 - Assault on Another Inmate |
| Date: March 3, 2002 | After-Dark Medical Transfer |

Narrative Summary (Continued) Page No.2

Dormitory #16. Upon arrival to the Law Library, Officer Nichols noticed Inmate Kenneth Brown, B/172592, cleaning up a large area of blood on one of the tables. Officer Nichols asked Inmate Brown what had happened. Inmate Brown stated, "Inmates Nelson and White were arguing and Inmate White grabbed a broom handle and hit Inmate Nelson in the face." Officer Nichols located Inmate White and asked him what had happened. Inmate White stated he was adjusting the temperature control on the heater in the Law Library and, allegedly, accidentally hit Inmate Nelson in the mouth with the broom handle. Officer Nichols then ordered him to pack his personal property, that he was going to be placed in Dormitory #7-A-Side, pending an investigation for assault on another inmate.

At approximately 7:40 PM, Officer Nichols notified Sergeant James Shedd of the incident. Officer Nichols informed Sergeant Shedd that Inmate White was going to be placed in Dormitory # 7-A-Side, Administrative Segregation, pending investigation for assault on another inmate.

At approximately 7:42 PM, an unidentified inmate informed Officer Nichols that the broom handle that was used in the incident was in the Dormitory #16 Supply Cabinet. Officer Nichols retrieved the broom handle and placed the broom handle in Dormitory #16 Administration Building in a secure location.

At approximately 7:45 PM, Officer Brian Lindsay entered Dormitory #16 and exited with Inmate Nelson en route to the Health Care Unit for a Body Chart and treatment.

At approximately 7:55 PM, Officer Lindsay arrived at the Health Care Unit with Inmate Nelson.

At approximately 8:00 PM, Nurse William Freeman, LPN, examined Inmate Nelson. Inmate Nelson had a 1-1/2" - 2" laceration underneath his nostrils (See Attached Body Chart). Nurse Freeman completed his examination of Inmate Nelson. Sergeant Shedd then entered the Health Care Unit and took photographs of Inmate Nelson's injuries.

At approximately 8:10 PM, Nurse Harris Dobbs, Director of Nursing, was notified of Inmate Nelson's condition. Nurse Dobbs recommended that Inmate Nelson be taken to Huntsville Hospital for treatment.

At approximately 8:12 PM, Officer Fred Cato exited Dormitory #16 with Inmate White en route to the Health Care Unit to receive a Body Chart.

At approximately 8:15 PM, Officer Cato arrived at the Health Care Unit with Inmate White. Inmate White was immediately examined by Nurse Freeman (See Attached Body Chart).

At approximately 8:20 PM, Officer Cato escorted Inmate White over to Dormitory #7-A-Side, for placement into Administrative Segregation.

At approximately 8:23 PM, Officer Cato arrived at Dormitory #7-A-Side, with Inmate White. Officer Cato then released Inmate White into custody of Officers Vernus Miles and Patrick Manary. Officers Miles and Manary placed Inmate White into Administrative Segregation.

White v Ala. P&P et al.
0018

CONTINUATION SHEET

Incident Number:

Type of Incident: RV#31 - Assault on Another Inmate

Date: March 3, 2002                          After-Dark Medical Transfer

Narrative Summary (Continued) Page No.3

At approximately 8:25 PM, Sergeant Shedd notified the On-Call Official, Captain Wendy D. Williams, of the incident.

At approximately 8:30 PM, Captain Williams advised Warden III Billy Mitchem and Warden II David J. Wise of the incident and the transfer.

At approximately 8:55 PM, Officers Brent Whisenant and Everett Biffle exited the institution with Inmate Nelson, en route to Huntsville Hospital for treatment.

At approximately 9:25 PM, Officers Whisenant and Biffle arrived at Huntsville Hospital with Inmate Nelson. Inmate Nelson was examined, x-rayed, and treated for lacerations and a fractured upper jaw (See details of treatment on Duty Post Log). Inmate Nelson is scheduled for a follow up appointment on March 4. 2002, at which time his jaw will be wired for healing purposes.

On March 4, 2002, at approximately 1:00 AM, Officers Whisenant and Biffle departed Huntsville Hospital with Inmate Nelson en route to Limestone Correctional Facility.

At approximately 1:40 AM, Officers Whisenant and Biffle arrived back at Limestone Correctional Facility with Inmate Nelson. Inmate Nelson was housed in the Health Care Unit room 153 pending further treatment.

Officer Nichols completed a thorough investigation of this incident. Officer Nichols questioned several inmates, including Inmates Brown, Hardy, and Joseph Jordan. B/166337 (See attached statements). Officer Nichols concluded that Inmate White had been infatuated with Inmate Nelson over an indefinite period of time. Inmate Nelson's repeated rejection of Inmate White's homosexual advances eventually provoked Inmate White to "lash" out against Inmate Nelson. Inmate White intentionally hit Inmate Nelson in the face with a broom handle.

At approximately 11:30 AM, Officer Nichols placed the broom handle into the I & I Evidence Box (See attached Evidence Sheet).

Officer Nichols has initiated disciplinary action against Inmate White for Rule Violation #31- Assault on Another Inmate.

No further action.

Attachments: Fax to Staton
         Inmate White Nelson's Body Charts
         Inmates Statements (Brown, Hardy and Jordan)
         I & I Evidence Form
         Hospital Log
         Photographs

Robert Nichols, COI

White v Ala. P&P et al.
0019

Ms. Harris,                                                    3/12/02

First I want to Apologize for my behavior and actions in 16 Dormitory Ms. Harris. I didn't mean to hurt Charles Nelson or anyone else for that matter. When this incident happen on 3-3-02 Ms. Harris I had a lot on my mind, I just had (2) brothers to die in one Month one here and the other one a Hamilton A&I State Hospital and family problems and being stressed out and seriously depressed and when he started on me. The Law Library it didn't make it any better The thing he started saying about my family just made me madder. I made a bad decision and I regret it till this day Ms. Harris, Then I get some news that you want me Closed out upgraded in Custody and no return to the Dormitory but stay in 7 Dorm, I'm not a Violent person Ms. Harris and no threat to no one in 16 Dormitory or 7 Dorm are myself. Me and Charles Nelson has been dealing with each for some time but I bet all of this was never meaning to you uh!!, But Frank Timmons can tell you about Charles Nelson and I. And Jeffery can tell you about the incident in the Law Library only if you ast these two before you Close me out and up grade my Custody and detaine me to only 7 Dormitory lock up. Now that Classification want's to do all this to me and will, when I go up for parole in three years I will still be in the prison system

White v Ala. P&P et al.
0020

because my Jacket when be messed up now with that written in it no way will I make it. And I don't have a bad Institution record and only one other Disciplinary for unauthorized Area. See Closed out and Custody up grade is for people who has that mind set and I do not one a history of Violent behavior. I just made a bad decision before I thought about it Ms. Harris and just these days waiting for disciplinary Court is running me crazy Ms. Harris But I guess that what everyone is 16 Dormitory want to see and staff because there is no telling how many different stories you have been told or heard. about me when this happen. But Please talk to Jeffery Horne and Frank Timmons it's not all me believe that Ms. Harris,

Thanks for Your Time

Willie White
1- Dorm 25-B

Thanks Again

N288

**STATE OF ALABAMA**
Department of Corrections
Inmate Stationery

Dr. Smith,                                    6/25/02

Hello! I have been doing some serious thinking and I don't deserved to be treated this way; and I shouldn't be closed out either.

This is a case of Discrimination toward me and it will not be excepted by me are my family members; Because I was closed out because of Ms. Harris personal feelings for Mr. Charles Nelson as being her head tutor, now I have witness as to what she said she would do to me and, me and my family is in the process of filing a writ of Habeas Corpus in the Limestone Circuit Court in this matter, Because my Institutional Files Don't show the behavior pattern Ms. Edna Harris laid out for you and the rest of the Seg Board or the Reviews Board and this is an act of cruel and unusual punishment being closed out for a person personal reason not a professional aspect of her job. This cell itself is killing me slowly mentally more of and physically and I can't keep going thru these anxiety attacks stressful days and nights and depression. Eventually I will be find one morning are night sick are Dead, and something has to be done Dr. Smith, I need to talk to the warden personally and soon so could you please schedule a day for me soon to see him Mr. Smith, this is a serious matter I need to talk to some one soon.

                                    Mr. Willie White



### STATE OF ALABAMA
# DEPARTMENT OF CORRECTIONS
### LIMESTONE CORRECTIONAL FACILITY
### P.O. BOX 66
### CAPSHAW, ALABAMA 35742

10/28/2002

To: Willie White # 140147                    Dorm 7A

From: J. Hayes, Classification

Re: Request slip on Custody reduction

I have received your letter concerning a custody change to medium and placement into P.C.

You were reclassified to Maximum custody 3/28/2002 six months ago. The classification manual permits reduction to Close custody after a period of six months not medium. Your next review will be in **March of 2003** at which time custody may be considered. At this time, due to the seriousness of the incident, no reduction is being recommended.

White v Ala. P&P et al.
0023

N266

**STATE OF ALABAMA**
Department of Corrections
Inmate Stationery

Mr. Hayes,                                                    2/27/03

I hope today when you had the Seq Board Meeting
on ME I hope that you will help me out. I know
that you are a firm person and stand by Rules of the
institution. Mr. Hayes I made a bad Judgment on 03/03/
02, and I have learn a great deal from this whole
situation, and I can stay among other inmates with
out getting into any more trouble and I do deserve
a chance Sir. I can promise you if you give me
another to be out in population are in P.C. There
will be no more Trouble out of me (ever). And I
will Take any Lenght of behavior contract Mr.
Hayes. I really take another Summer in this Cell
because I'm not in the best of health as Ms. Day
Said. PLEASE CONSIDER IN GIVEN ME A CHANCE,
AND HOPE THAT YOU THE WARDEN, CAPT. STICKER,
CAPT. WALLACE WILL CONSIDER ON RELEASING ME TO
P.C. STATUS SIR. THANKS FOR YOUR TIME.

Willie White
#140147   7A 25-B

Warden Mitchem                                    4/28/03

Can you please explain to me why I am being
punished like this, when you let two inmates out
of lock up and there situation was more serious
then mines. Both inmates has a strip records of
voilent incidents when I have nos in my institution-
al files. But this and I'm doing so much time on,
so what makes me any different from those two
inmates Warden Mitchem. But I can say this
is what Ms Harris told me I'm seeing now when it
is wrong because she is using punitive Con-
finement to hold me because of their feelings
for her head tutor. Because Warden Mitchem
my character in this institution recent and
long standing relations between prisoners & officers
does not Constitute lenght in Segregation time.
are Administrative Segregation there is no serious
burden of justification for continued Segregation
time. See Warden Mitchem these other inmates
you let out Back into population and P.C. are
and have High rates of assaults and a particular
PATTERNS OF Assaults. And These things are documented
in there files in this institution and they also
have prior reports of Voilence in this institution
but they are out and enjoying the privileges that
the other inmates are getting and I'm constantly
being punished over & over Warden Mitchem and
it is wrong. I have always known you to be fair a Man
when you were a Lt. But I don't see the same
person anymore Warden Mitchem. I am not trying
to make you mad But get some understanding

White v Ala. P&P et al.
0025

Warden Mitchem. I have seen inmates come over here with assault on a inmate do 45 days and leave, and some have had 3 assaults in 6 months time. Warden Mitchem. All I want is an opportunity like these other inmates have gotten. See, because Warden Mitchem I'm not a violent person nor a dangerous person never have, never will, but this is the Imagine Ms. Harris have practice of say. I am in her recommendation to you and Mr. Hayes. Warden Mitchem, if I had the kind of violent and behavior problems these other inmates has. I would do my time with know fuss. But I don't, Warden Mitchem.

Willie White #140147
J.H. 25 cell

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS
LIMESTONE CORRECTIONAL FACILITY
P.O. BOX 66
CAPSHAW, ALABAMA 35742

3/23/04
Date

MEMORANDUM

TO:   David I. Wise, Warden III
      Mr. Jim Hayes, Classification

FROM:  EDWARD MARTIN COI

RE:   Peace Agreement

This is to acknowledge that we have been orally reprimanded on the above date concerning our disagreement. By our signature(s), we relieve any and all Department of Corrections Officials of any liabilities and damages. We acknowledge that our problem(s) have been worked out and that we can live at this institution without violence existing between us. I (we) understand that even though I (we) have signed this form, disciplinary action may still be taken against us. This statement is made of my (our) own free will, without threats or promises from anyone.

| NAME (print) | AIS# | INMATE'S SIGNATURE | DATE |
|---|---|---|---|
| Willie White | 190147 | Willie White | 3/23/04 |
| Patrick Riggins | B/149859 | Patrick Riggins | 3-23-04 |

CIRCUMSTANCES:  On 3-20-04 Inmates White and Riggins had an Disagreement in Dormitory #6, Both Inmates Riggins and White Now Agree that They have resolved Their problems and that They can live Together without Threat To Each Other

WITNESS:  E J Martin   COI    DATE:  3/23/04   TIME:  5:35 pm

cc:   Classification (one for each inmate)
      File
      Shift File

White v Ala. P&P et al.
0027

DOC Form 225B    (Revised 1/5/2003)

# ALABAMA DEPARTMENT OF CORRECTIONS
## DISCIPLINARY REPORT

1. INMATE: **Willie White**                CUSTODY: **Closed**        AIS#: **B/140147**

2. FACILITY: **Limestone Correctional Facility**        DISCIPLINARY NUMBER:

3. The above inmate is being charged by   Officer Fred Cato

   with a violation of Rule Number   **35**  , specifically   **Fighting without a Weapon**

   from Administrative Rules and Regulation #403, which occurred on or about   **May 18,**                2005,
   at (time)   **6:45**   (a.m./ p.m.), Location:   **Front of Dormitory #6**   . A hearing
   on this charge will be held after 24 hours from service.

4. Circumstances of the violation(s) are as follows:   **Officer Fred Cato observed Inmate Willie White B/**
   **140147 fighting with Inmate Claude Hester B/127717 in front of Dormitory #6. This places Inmate**
   **White in violation of R.V. #35 – Fighting without a Weapon.**

   **May 18, 2005**                       **Fred Cato, COI**    _Fred Cato co. 1_
   Date                          Arresting Officer / Rank / Signature

5. I hereby certify that I have personally served a copy of the foregoing upon the above named inmate and I have
   informed inmate of his right to present a written or oral statement at the hearing and to present written questions for
   the witnesses on this the   _20th_   day of   _MAY_   , 2005, at (time)   _6:25_   (am / pm)

   _Larry Jack_  COI            _140147 WILLIE WHITE_
   Serving Officer / Rank / Signature        Inmate's Signature / AIS Number

6. Witnesses desired?    NO: x _WILLIE WHITE_        YES:
                          Inmate's Signature              Inmate's Signature

7. If yes, list:   N/A

8. Hearing Date: _MAY 25, 2005_    Time: _7:30 PM_    Place: _Dorm 7th Side_

9. Inmate must be present in Hearing Room. If he is not present, explain in detail on additional page and attach.

10. A finding is made that the inmate (is / is not) capable of representing himself.

    _(signature)_
    Signature / Hearing Officer

11. Plea: _____    Not Guilty    x _Willie White #140147_    Guilty

12. The Arresting Officer, Inmate, and all witnesses were sworn to tell the truth.

    _(signature)_
    Signature / Hearing Officer

13. Arresting Officer's testimony (at the hearing):   On May 18, 2005, at approximately 6:45 P.M., I,
    Officer Fred Cato saw Inmate Claude Hester B/127717 fall to the ground on his back in
    front of Dormitory #6. I responded immediately.  Inmate Hester and Inmate Willie White
    B/140147 were both in a physical confrontation with each other.  Continued...

                                         Annex C to AR 403    (Page 1 of 3)

White v Ala. P&P et al.
0028

## ALABAMA DEPARTMENT OF CORRECTIONS
## DISCIPLINARY REPORT (OPTIONAL)

Inmate Name & AIS # :    **Willie White B/140147**        Disciplinary Number:  **LCF-0141-0S**

Facility :    **Limestone Correctional Facility**

**CONTINUED ARRESTING OFFICER'S (AO) STATEMENT AND/OR QUESTION BY HEARING OFFICER (QBHO) TO ARRESTING OFFICER:**

...I reported it to Officer Patrick Manary, the Cubicle Officer, who in turn, notified Lieutenant Jim Gates.  Lieutenant Gates escorted both inmates to Dormitory #7 for a body chart and lock up.  Officer Cato initiated disciplinary actions against Inmates Hester and White for Rule Violation #35-Fighting without a Weapon.

**CONTINUED INMATE'S STATEMENT AND/OR QUESTIONS BY HEARING OFFICER (QBHO) TO INMATE:**

**CONTINUED WITNESS TESTIMONY (QBHO):**

**CONTINUED FINDINGS OF FACTS:**

**CONTINUED BASIS FOR FINDING OF FACT:**

**CONTINUED HEARING OFFICER'S RECOMMENDATIONS:**

**OTHER:**

Annex C of AR 403 (page 3 of 3 pages)

White v Ala. P&P et al.
0029

14. Inmate's Testimony:   Guilty.

Witness:   N/A                          Substance of Testimony:

Witness:   N/A                          Substance of Testimony:

Witness:   N/A                          Substance of Testimony:

15. The Inmate was allowed to submit written question to all witnesses. Copy of questions and answers are attached.

(Signature) Hearing Officer

16. The Following witnesses were not called   -   reason not called.
   1.   N/A
   2.   N/A
   3.   N/A

17. After hearing all testimony, the Hearing Officer makes the following findings of fact:   (Be Specific) the Hearing Officer finds that :   H/O accepts Inmate White's guilty plea.

18. Basis for Finding of Fact:   Inmate pled guilty.

19. Hearing Officer's Decision:              x    Guilty                         Not Guilty
20. Recommendation of Hearing Officer:   30 days extra duty for 2 hours per day on 2nd shift; 30 days loss of store, visitation and telephone; time in Admin Seg be time served on this disciplinary, and he be released to G Dorm when and if approved by Warden.

Signature / Hearing Officer
Lieutenant Jim Gates
Typed Name and Title

21. Warden's Action / Date   5/27/05
   Approved
   Disapproved
   Other (specify)

22. Reason if more then 30 calendar days delay in action.

23. I hereby certify that a completed copy of the foregoing Disciplinary Report was served on the above named inmate on this the   7TH   day of   JUNE   2005, at (time)   12 48   (am / pm).

Robert M. Nichols   COII                 William White   140147
Signature / Serving Officer / Title        Inmate's Signature and AIS Number

STATE OF ALABAMA
BOARD OF PARDONS AND PAROLES
301 S. RIPLEY STREET
MONTGOMERY, ALABAMA  36130 - 2405

01-18-2006


WARDEN - LIMESTONE INFIRMARY
28779 NICK DAVIS RD
HARVEST  AL  35749-7009 .


RE:     WHITE WILLIE LEE
        140147
        PRL CONS DT  08/2005

PLEASE COMPLETE THE WARDEN'S REPORT PORTION OF THIS FORM AND

RETURN ENTIRE SHEET WITHIN TWO WEEKS TO:

                BOARD OF PARDONS AND PAROLES
                P O BOX 302405
                MONTGOMERY, ALABAMA  36130-2405

THANK YOU FOR YOUR COOPERATION.


            DO NOT SEPARATE
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

                WARDENS REPORT

JOB PERFORMANCE: GOOD    FAIR    POOR
COMMENT:    White institutional behavior has greatly improved.  He has served 10
    years on  a Life sentence for Rape I .  He has attended the following programs:
    Anger Mgt 8-07   He attended Healthy Use of Leisure 7/99
WARDEN: _____              DATE: 2/17/06


No other program found.


This form was
prepared by Bdm. Dau

White v Ala. P&P et al.
0031



# STATE OF ALABAMA
# DEPARTMENT OF CORRECTIONS
LIMESTONE CORRECTIONAL FACILITY
28779 NICK DAVIS ROAD
HARVEST, ALABAMA 35749

### August 19, 2007

**MEMORANDUM:**

**TO:**      Jimmy Patrick, Warden II
             Ms. Edna Harris, Classification

**FROM:**    **Officer Joshua Beaty, Correctional Officer**

**RE:**      Peace Agreement

This is to acknowledge that we have been orally reprimanded on the above date concerning our disagreement. By our signature(s) we relieve any and all Department of Corrections Officials of any liabilities and damages. We acknowledge that our problem(s) have been worked out and that we can live at this institution without violence existing between us. I (we) understand that even though I (we) have signed this form, disciplinary action may still be taken against us. This statement is made of my (our) own free will, without threats or promises from anyone.

| NAME (print) | AIS # | INMATE'S SIGNATURE | DATE |
|---|---|---|---|
| Willie White | ~~B/181915~~ | *Willie White* | 8-19-07 |
| Ron Hatcher | B/153577 | *Ron Hatcher* | 8-19-07 |
|  |  |  |  |
|  |  |  |  |

**CIRCUMSTANCES:**   Inmates White and Hatcher were involved in a verbal altercation on August 19, 2007. Both Inmates agree to live in General Population, Special Unit, without anymore verbal or physical altercation. Violation of this Peace Agreement will result in Disciplinary Action and placement in Dormitory E, Segregation.

**WITNESS:** ~~Sgt C. Ugifd~~   **DATE:** *8-19-07*   **TIME:** *2:45 PM*

cc:   Classification (one for each inmate)
      File
      Shift File

White v Ala. P&P et al.
0032



# STATE OF ALABAMA
## DEPARTMENT OF CORRECTIONS
### LIMESTONE CORRECTIONAL FACILITY
28779 NICK DAVIS ROAD
HARVEST, ALABAMA 35749

**MEMORANDUM:**

**TO:**  Jimmy Patrick, Warden II
Ms. Edna Harris, Classification

**FROM:**  SGT. ANTHONY FLEMING

**RE:**  Peace Agreement

This is to acknowledge that we have been orally reprimanded on the above date concerning our disagreement. By our signature(s) we relieve any and all Department of Corrections Officials of any liabilities and damages. We acknowledge that our problem(s) have been worked out and that we can live at this institution without violence existing between us. I (we) understand that even though I (we) have signed this form, disciplinary action may still be taken against us. This statement is made of my (our) own free will, without threats or promises from anyone.

| NAME (print) | AIS # | INMATE'S SIGNATURE | DATE |
|---|---|---|---|
| STEVEN FALLETTA | W202564 | ~~signature~~ | 8/21/07 |
| WILLIE WHITE | B140147 | Willie White | 8/21/07 |
| | | | |
| | | | |

**CIRCUMSTANCES:** INMATE STEVEN FALLETTA W202564, AND INMATE WILLIE WHITE B140147, WERE IN A VERBAL ALTERCATION, OVER SOME STORE GOODS, THAT INMATE WHITE OWES INMATE FALLETTA.

_____

**WITNESS:** _____  **DATE:** 8/21/07  **TIME:** 4:00 PM

**cc:**  Classification (one for each inmate)
File
Shift File

White v Ala. P&P et al.
0033



# STATE OF ALABAMA
# DEPARTMENT OF CORRECTIONS
### LIMESTONE CORRECTIONAL FACILITY
### 28779 NICK DAVIS ROAD
### HARVEST, ALABAMA 35749

**MEMORANDUM:**

**TO:**       Jimmy Patrick, Warden II
              Ms. Edna Harris, Classification Supervisor

**FROM:**     **Sergeant Anthony Hatcher**

**RE:**       Peace Agreement

This is to acknowledge that we have been orally reprimanded on the above date concerning our disagreement. By our signature(s) we relieve any and all Department of Corrections Officials of any liabilities and damages. We acknowledge that our problem(s) have been worked out and that we can live at this institution without violence existing between us. I (we) understand that even though I (we) have signed this form, disciplinary action may still be taken against us. This statement is made of my (our) own free will, without threats or promises from anyone.

| NAME (print) | AIS # | INMATE SIGNATURE | DATE |
|---|---|---|---|
| Leon McGee | B/145983 | *L. McGhee* 145983 | 10-26-07 |
| Willie White | B/140147 | *Willie White* | 10-26-07 |
|  |  |  |  |
|  |  |  |  |

**CIRCUMSTANCES:** Inmates Leon McGee, B/145983 and Willie White were involved in a verbal altercation. Both Inmates McGee and White agree to live within the Special Unit General Population without any verbal or physical altercation. Violation of this agreement will result in disciplinary action and placement in Dormitory E.

**WITNESS:** *Stanley D Hatcher* **DATE:** *Oct 26 2007* **TIME:** *12:15 PM*

cc:   Classification (one for each inmate).
      File
      Shift File

White v Ala. P&P et al.
0034



# STATE OF ALABAMA
# DEPARTMENT OF CORRECTIONS
### LIMESTONE CORRECTIONAL FACILITY
### 28779 NICK DAVIS ROAD
### HARVEST, ALABAMA 35749

**MEMORANDUM:**

**TO:**        Jimmy Patrick, Warden II
              Ms. Edna Harris, Classification Supervisor

**FROM:**      Sergeant Anthony Hatcher

**RE:**        Peace Agreement

This is to acknowledge that we have been orally reprimanded on the above date concerning our disagreement. By our signature(s) we relieve any and all Department of Corrections Officials of any liabilities and damages. We acknowledge that our problem(s) have been worked out and that we can live at this institution without violence existing between us. I (we) understand that even though I (we) have signed this form, disciplinary action may still be taken against us. This statement is made of my (our) own free will, without threats or promises from anyone.

| NAME (print) | AIS # | INMATE SIGNATURE | DATE |
|---|---|---|---|
| Edward Frazier | B/157844 | *Edward Frazier* | 2-19-08 |
| ~~Willie White~~ | B/140147 | *Willie White* | 2-19-08 |
|  |  |  |  |
|  |  |  |  |

**CIRCUMSTANCES:**  Inmate Edward Frazier, B/157844 and Willie White, B/140147 were involved in a verbal altercation on February 19, 2008. Both Inmates agree to live in the Special Unit General Population without any other verbal or physical altercation. If any other altercation occurs from Inmate Frazier and White Disciplinary action will be taken.

**WITNESS:** *Robert M. Nichol* **DATE:** 2-19-2008 **TIME:** 1:44pm

cc:   Classification (one for each inmate)
      File
      Shift File

White v Ala. P&P et al.
0035



*State of Alabama*

*Alabama Department of Corrections*

**Bob Riley**
GOVERNOR

Research and Planning
P. O. Box 301501
Montgomery, AL 36130-1501

**Donal Campbell**
COMMISSIONER

January 30, 2003

ADMINISTRATIVE REGULATION                    OPR: INSTITUTIONS
NUMBER                    403

## DISCIPLINARY HEARING PROCEDURES FOR MAJOR RULE VIOLATIONS

**I      GENERAL**

A.     This regulation establishes policies/procedures governing the conduct and disposition of Disciplinary Hearings for inmates in the custody/control of the Alabama Department of Corrections (ALDOC). The Commissioner, his designee(s), Wardens and other ALDOC employees whose duties involve the Hearing or processing of disciplinary proceedings are responsible for following the provisions of this regulation. All procedures require final action by the Institutional Head or his/her designee. The Institutional Head will identify said designee in writing.

B.     A Hearing Officer will hear evidence in cases of major violations of departmental administrative regulations, and institutional rules and regulations, for which punishments or sanctions may be imposed.

C.     Sanctions or punishments may include, segregation, forfeiture of earned good time, custody review, and loss of privileges.

D.     When an inmate with a serious mental illness receives a disciplinary report, the inmate's mental status will be considered in determining the inmate's competency to participate in the hearing process. When an inmate is found incompetent, the disciplinary hearing process will be delayed until the inmate's competence has been restored. The inmate's mental status will be considered in the disposition when as inmate with a mental illness is found guilty of a rule violation. The institutional psychologist will assess the inmate's competency and culpability, and provide relevant information to the disciplinary hearing officer.

E.     Inmates will not be punished for symptoms of a serious mental illness. This is not to say that a mental health inmate should never receive a disciplinary. The intent of the mental status evaluation is to determine if the misconduct is symptomatic of the presence of a

1 of 24

**EXHIBIT**

**B**

AR 403 January 30, 2003

serious mental illness. If such is the case, disciplinary action is deemed counterproductive and should not be completed.

**II    DUE PROCESS REQUIREMENTS**

Any inmate charged with a violation of departmental administrative regulations, institutional rules and regulations must be given a due process hearing if the violation can result in the loss of earned good time and/or confinement to segregation. An inmate can be placed in disciplinary segregation for up to 45 days and upon reclassification from work release for up to 30 days.

Due Process requirements are:

A.    The inmate must be given written notice of the charges at least 24 hours prior to the Hearing.

B.    The inmate must be permitted to attend the hearing and testify or present documentary evidence, unless he refuses to attend or is disruptive.

C.    The inmate must be permitted to call a reasonable number of reasonably available witnesses to the hearing, normally no more than three (3) witnesses.

D.    The inmate must be permitted to prepare and submit to the Hearing Officer, prior to the hearing, pertinent written questions to be asked of witnesses at the hearing, or to ask another inmate to assist him in preparing these questions if he is incapable of doing so.

E.    The inmate must be informed of the decision of the Hearing Officer, and must be given a copy of the signed and approved Disciplinary Report which lists the findings of fact, the basis for the findings of fact, the decision of the Hearing Officer, and the punishment or sanction imposed.

F.    If the inmate has been identified as a mental health inmate, an evaluation of the inmate's competency to understand the disciplinary process must be conducted by the institutional psychologist.

**III    PROCEDURE BEFORE HEARING**

A.    <u>Arrest or Charge of Inmate</u>

The arrest or charge of an inmate for a rule violation may be made by any employee or contract medical employee of the ALDOC. The person making the arrest or charge is designated as the Arresting Officer. The Arresting Officer will appear as a witness at the Disciplinary Hearing. For the purpose of this regulation, an arrest is defined as the taking of an inmate into custody or making a charge by the authority of this regulation, federal law, Alabama law, or municipal law for the purpose of charging him/her with an offense or violation of a departmental administrative regulation or institutional rules and regulations or

charges. The arrest should be made within ten (10) calendar days after the violation is reported, discovered, or within ten (10) calendar days after an investigation has been completed, or within ten (10) calendar days after an escapee (in an escape charge) is back in custody of the ALDOC.

B.     Appointment of Hearing Officer

Wardens will appoint a ALDOC employee to serve as Hearing Officer of any charge(s) brought against an inmate pursuant to AR 403. Wardens, personnel who have formed an opinion of the innocence or guilt of the charged inmate, Arresting Officer, and witnesses may not serve as Hearing Officer.

C.     Investigation of Charges

The Wardens may, if he/she deems it necessary or advisable, order an investigation of the charges at the institutional level and a report to him/her or request an investigation by the Investigations and Intelligence (I & I) Division.

D.     Preparation of Charges

ALDOC Form 225B, Disciplinary Report (Annex C) items 1-4 must be completed when the inmate is charged. If the inmate's actions in one incident violates various major or minor rules, then the Arresting Officer may use his/her discretion in which charges to bring. All offenses growing out of the same incident may be charged at the same time, using separate 225B forms for each charge. The charge(s) should be filed and served within ten (10) calendar days after the inmate is arrested or charged. If the charge is escape, the writer of the incident report will complete an incident report which will be notarized (See AR 302). It will include therein additional information such as contacts for evidence and testimony including law enforcement officers, free world witnesses, and ALDOC personnel.

E.     Serving the Inmate with the Charge

The Form 225B completed through item five must be served by the Serving Officer on the inmate at least 24 hours before the schedule hearing. The Serving Officer will read the charges to the inmate. If the inmate refuses to sign for receipt of charges, then the Serving Officer will so indicate by "Refused to Sign" and sign Serving Officer's signature. The Serving Officer at this time will inform the accused inmate that he/she should prepare his/her testimony, in the form of a written statement, to be read by the inmate to the Hearing Officer during the hearing. After the inmate has been served a copy of 225B, a suspense copy will be placed in the inmate's institutional file.

F.     Obtain Name of Witnesses Inmate wants at Hearing

At the time of service of charges on an inmate, the Serving Officer will advise the inmate of his/her right to call witnesses whose testimony will be relevant and whose presence will not present a security threat. The Serving Officer will obtain those names at this time and will not refuse to list any witnesses desired by the inmate. The Hearing Officer will determine if the

witnesses' testimony could possibly be relevant and/or if bringing certain witness (es) would present a security threat. Normally no more than three (3) witnesses with relevant testimony are called. The Hearing Officer will be responsible for having the inmates and employees called as witnesses present at the hearing. Any free world witness the inmate wishes to testify, and whose testimony would be relevant, must be written or called by the inmate, and permission must be given to the inmate to write or call. Form 225B, Items 6 and 7, are to be completed by the Serving Officer when serving the inmate. If an inmate requests more than three witnesses, including free world witnesses, the Hearing Officer, prior to the hearing, may require the inmate to submit a summary of the witnesses' expected testimony. The Hearing Officer may refuse to allow any witness whose testimony is not relevant to testify.

G.    Provide Data on Inmate to Hearing Officer

At institutions where computer input, printer capability, and personnel are available, on the working day prior to the Disciplinary Hearing, a copy of the inmate's record display, CDINC may be produced and provided to the Hearing Officer along with the inmate's good time earning status and good time earned.

## IV    PROCEDURES DURING HEARING

The Hearing should be held within ten (10) working days after the inmate has been served with the charge(s), but cannot be held in less than 24 hours. If there is a need to postpone or reschedule the hearing, Form 225D, Notice of Postponement of Disciplinary Hearing (Annex D) should be completed advising the inmate of the rescheduled date and reason for delay. The Hearing Officer at the time the hearing is to begin will follow these procedures:

A.    Have the inmate present in the hearing room and identify him/her as the inmate charged. The inmate must be present in the hearing room unless he/she refuses to attend the hearing or is disruptive. You may proceed without him/her only for these two (2) reasons. If he/she is not present, explain in detail on an additional page and attach to the disciplinary report.

B.    Read the charges to the inmate and determine if he/she understands the charges.

C.    Determine if the inmate is capable of acting in his/her own defense. If the inmate has been identified as a "mental health" inmate, review the disciplinary report to ascertain if an assessment of the inmate's mental status has been performed by the institutional psychologist. If an assessment has been done, and the inmate has been deemed capable of understanding the disciplinary process, then determine if the inmate is capable of acting in his/her own defense. If the inmate is not capable of acting in his/her own defense, then appoint an on-duty ALDOC employee to assist the inmate. If the inmate is provided assistance, the hearing may be delayed up to five (5) working days if requested. Neither inmates nor free world counsel may represent an inmate in a disciplinary hearing. Complete item 10 on Form 225B.

AR 403 January 30, 2003

D.  Ask the inmate how he/she pleads and record on Form 225B. If inmate pleads guilty, then go forward to procedural Step L.

E.  Swear the inmate and all witnesses under oath to testify truthfully.

F.  Hear the evidence brought by the Arresting Officer and all witnesses present at the hearing. Affidavits and written statements should not be used in lieu of testimony, except in extreme circumstances, which must be documented on additional page(s) and attached to the disciplinary report.

G.  Allow the inmate to read his/her prepared written statement to the Hearing Officer and allow the inmate to add his/her oral testimony if the inmate desires.

H.  Ask the questions, if relevant, prepared by the inmate, to the respective witness (es) and write the answers.

I.  Explain to the inmate why any witness (es) he/she has requested were not called and complete item 16 on Form 225B.

J.  Dismiss everyone from the hearing room, consider the evidence and make a finding of fact and finding of not guilty or guilty and determine the punishment or sanctions imposed. The Hearing Officer may determine that the violation charged has not been proven but that a lesser included similar offense has been proven. A lesser included violation is defined as being a violation in which some but not all of the elements of proof of the originally charged violations are present. With good justification the Hearing Officer has authority to find the inmate guilty of a lesser included offense, in which case, provisions of AR 414 may apply in order to complete disposition of appropriate disciplinary action.

K.  Call the inmate into the hearing room and inform him/her of the decisions reached.

L.  If the inmate has pled guilty, then omit procedures E through K, swear in the inmate only, require the inmate to explain the details of his/her violation to you, have the inmate sign the guilty plea, and then, make a finding of fact, and a finding of guilt or innocence. If the inmate's plea of guilty is accepted then inform him/her of the punishment or sanctions imposed. If the inmate refuses to sign the guilty plea this will be considered a "Not Guilty" plea and proceed with the hearing.

## V    PROCEDURES AFTER HEARING

The Hearing Officer, after the hearing will follow these procedures:

A.  Have a condensed version of all pertinent testimony typed on Form 225B using additional pages if necessary.

B.  Complete all spaces on Form 225B or put [N/A] (Not Applicable) in those appropriate spaces.

AR 403 January 30, 2003

C.   Complete, in the appropriate space, specifically the findings of fact made by the Hearing Officer.

D.   Complete, in the appropriate space, specifically the basis for the findings of fact.

E.   Obtain all necessary signatures on the Disciplinary Report Form 225B.

F.   The Warden or his/her designee will approve or disapprove the findings and/or recommendations within ten (10) working days after hearing. The Warden may not disapprove a finding of "not guilty". If the Warden disapproves of the recommended punishment, he/she may order the punishment to be reduced.

G.   A completed signed copy of the disciplinary report will be served on the inmate as soon as possible without undue delay after the Warden's determination, and all approved punishments will begin at this time or at the time the inmate is placed in the segregation cell to begin serving disciplinary segregation. If the Warden determines that a security threat will exist by a delay in the imposition of punishment, he/she may order such punishment to begin at any time after the hearing is conducted.

H.   If the Warden approves the recommendation of the Hearing Officer, or a lesser punishment, he/she will:

   1.   At units with computer terminal input capability: Coordinate with and forward or issue his/her comments and supporting documents to the institutional Social Service Coordinator. The Coordinator will insure the terminal operator takes the required action to effect the loss of good time in accordance with the Computer Terminal Operator's Manual, and implement classification procedures or other considerations. Institutional Social Services will forward/issue the completed and signed disciplinary report to the following:

      a.   One copy to the Board of Pardons and Parole.

      b.   One copy to the Director of Investigations and Intelligence in all cases where there has been a violation of Federal or State law.

      c.   Original to the Director of Central Records, stamped as "Entered" at the terminal, initialed by the operator, and dated on the date of entry.

      d.   One copy retained in the inmate's institutional file.

   2.   At units without computer terminal capability: Submit his/her comments and supporting documents to the Director of Central Records for any further action needed to effect the loss of good time or other consideration. The Director of Central Records will accept the action of the Warden for less severe punishment as final. Additionally, units without computer terminal capability, will furnish one copy to the Board of Pardons and Paroles, and one copy to the Director of Investigations and Intelligence in all cases where there has been a violation of federal or state law. The

AR 403 January 30, 2003

original will be retained in the inmate's Central Record file. The Warden will notify the inmate in writing of his/her approval or recommended disapproval, and one copy of the Warden's action will be forwarded to Social Services for classification purposes and the same copy retained in the inmate's institutional file.

## VI    MISCELLANEOUS PROVISIONS

A.    Arrest and Hearing Based on Information From Confidential Sources

If the arrest of an inmate is made upon information received from confidential source(s), the following procedures should be followed:

1.    The identity of a confidential source(s) of information will remain confidential. Precautions must be taken to insure the reliability of any information received from a confidential source(s).

2.    The facts obtained from confidential source(s) will be presented verbally at the hearing by the person receiving the information from the confidential source.

3.    No decision in a disciplinary proceeding may be based upon information from an undisclosed informant unless there is corroborating information or evidence or unless the reliability of the source satisfies the Hearing Officer that the information is true. The basis for accepting the source as reliable should be indicated in item 18 on Form 225B.

B.    Excusing Witnesses Called by Inmate

As the names of witnesses desired by the accused have been obtained during the notification and serving process, they (witnesses) are required to appear, unless excluded for specific reasons by the Hearing Officer. Reasons for not calling a witness may include, but are not limited to: inmate witness declining to appear voluntarily; the witness being repetitive in that such witness is expected to provide the same information as other witnesses; the witness not having personal knowledge of the circumstances of the incident; endangering the security of the institution; or an existing possibility of retribution which could harm an individual. The reason (s) for not calling any witness requested by an inmate will be explained to the inmate and item 16 on the Form 225B must be completed.

C.    Determine if the Inmate is capable of acting in his/her own defense. If the inmate has been identified as a "mental health" inmate, review the disciplinary report to ascertain if an assessment of the inmate's mental status has been performed by the institutional psychologist. If an assessment has been done, and the inmate has been deemed capable of understanding the disciplinary process, then determine if the inmate is capable of acting in his/her own defense. If the inmate is not capable of acting in his/her own defense, then appoint an on-duty ALDOC employee to assist the inmate. If the inmate is provided assistance, the hearing may be delayed up to five (5) working days, if requested. Neither other inmate's nor free-world counsel may represent an inmate in a disciplinary hearing. Complete item 10 on the Form 225B. In any case where a disciplinary or rule violation has

AR 403 January 30, 2003

been voided or otherwise overturned as a result of a technicality or due process violation, but where the behavior indicates the need for a more restrictive placement or custody, classification and/or the Central Review Board may classify the offender as deemed appropriate based upon the specific act or behavior itself.

D.  Adjudication - A major violation may be adjudicated with a behavioral citation in accordance with AR 414 provided the following conditions are met:

    1.  There is no injury to staff during the incident or as a result of the violation.

    2.  No consequences arise which result in the loss or destruction of property and security of the institution.

    3.  There is no serious injury to inmates as a result of the violation or incident.

    4.  The violator is not likely to receive disciplinary segregation.

    5.  With written justification any combination of the Citing Officer, Receiving Supervisor, or the Warden or his/her designee, determines that a behavioral citation is appropriate due to circumstances of the incident or violation.

E.  For mental health inmates deemed competent to participate in the disciplinary process, the disciplinary hearing officer will consider the mental health evaluation and any pertinent recommendations prior to determining the inmate's guilt or innocence in making a disposition of the case. The institutional psychologist will be contacted for clarification, if the hearing officer has questions about recommendations. If the inmate is found guilty, the hearing officer may impose punishment and/or refer the inmate for treatment.

F.  The disciplinary process will not proceed for an inmate deemed incompetent. The process will be suspended until the inmate has been restored to competency. The institutional psychologist will advise the disciplinary hearing officer when the inmate has been restored to competency, and the disciplinary hearing process can proceed. If the inmate has not been restored to competency within six months, information regarding the rule violation and the inmate's inability to proceed with the disciplinary hearing will be documented in an incident report. The incident report will be filed in the inmate's institutional file. The disciplinary report will be removed from the file and no further action will be taken.

G.  Referral for a mental health consultation to the disciplinary process may be made: 1) at the time of the rule violation, 2) when review of the disciplinary report identifies the inmate as having a serious mental illness, or 3) whenever an inmate not previously identified as having a serious mental illness demonstrates signs of compromised functioning during the hearing process.

## VII    SANCTIONS

A.    Annex A, Violations Table and Authorized Sanctions, contains a table listing by violation number and the violation type and sanctions. Annex B, Definitions and Examples of Rule Violations, contains definitions and examples of the violations listed in Annex A.

B.    Inmates removed from programs for conviction of a new crime will be permanently removed from eligibility for correctional incentive time by placement in Class IV CIT status permanently (See Administrative Regulation 427 and 432).

C.    Approved actions by the Warden or his/her designee is final and the sanctions will begin on the effective date shown on the charges.

## VIII    STANDARD OPERATING PROCEDURES

Institutions may prepare a Standard Operating Procedure (SOP) to ensure compliance with provisions of this regulation.

## IX    APPEAL OF THE INMATE

The inmate may not appeal the final action by the Warden or his/her designee.

## X    REFERENCE

Administrative Regulation 414, "Behavior Citation Procedures for Informal Disciplinary Actions"

## XI    SUPERSESSION

This regulation supersedes Administrative Regulation 403, dated October 3, 1996.


_____
Donal Campbell, Commissioner

## ANNEXES

Annex A - Violations Table and Authorized Sanctions

Annex B - Definitions and Examples of Rule Violations

Annex C - ALDOC Disciplinary Report (ALDOC Form 225B)

Annex D - Notice of Postponement of Disciplinary Hearing (ALDOC Form 225D)

AR 403 January 30, 2003

# ALABAMA DEPARTMENT OF CORRECTIONS
## VIOLATIONS TABLE AND AUTHORIZED SANCTIONS
### ANNEX A

### VIOLATION AGAINST PERSONS

| MAJOR RULE VIOLATION | VIOLATION TYPE |
|---|---|
| 28 | HOMICIDE |
| 29 | ASSAULT ON PERSON(S) ASSOCIATED WITH THE ALDOC |
| 30 | ASSAULT ON PERSON(S) NOT ASSOCIATED WITH ALDOC |
| 31 | ASSAULT ON ANOTHER INMATE |
| 32 | SEIZING OR HOLDING HOSTAGES |
| 33 | UNLAWFULLY DETAINING ANY PERSONS |
| 34 | FIGHTING WITH A WEAPON |
| 35 | FIGHTING WITHOUT A WEAPON |
| 36 | SEXUAL ASSAULT (FORCIBLE) |
| 37 | SEXUAL OFFENSE (NON-FORCIBLE)/SOLICITING |
| 38 | INDECENT EXPOSURE/EXHIBITION |
| 39 | EXTORTION OR BLACKMAIL |
| 40 | ROBBERY |
| 41 | MAKING FALSE STATEMENT OR CHARGE TO A ALDOC EMPLOYEE WITH INTENT TO DECEIVE THE EMPLOYEE OR TO PREJUDICE ANOTHER PERSON |
| 42 | GATHERING AROUND AN EMPLOYEE IN A THREATENING OR INTIMIDATING MANNER |
| 44 | THREATS |

### SECURITY VIOLATION

| MAJOR RULE VIOLATION | VIOLATION TYPE |
|---|---|
| 45 | ESCAPE BY FORCE |

Annex A to AR 403 (page 1 of 4)

AR 403 January 30, 2003

### ALABAMA DEPARTMENT OF CORRECTIONS
### VIOLATIONS TABLE AND AUTHORIZED SANCTIONS
### ANNEX A (Continued)

| | |
|---|---|
| 46 | ATTEMPT TO ESCAPE BY FORCE |
| 47 | ESCAPE WITHOUT FORCE |
| 48 | ATTEMPT TO ESCAPE WITHOUT FORCE |
| 49 | ABSENT WITHOUT LEAVE |
| 50 | BEING IN AN UNAUTHORIZED AREA |
| 51 | UNAUTHORIZED POSSESSION OF ESCAPE DEVICE |
| 52 | UNAUTHORIZED POSSESSION OF WEAPON OR DEVICE THAT COULD BE USED AS A WEAPON |
| 53 | INCITING TO RIOT OR RIOTING |
| 54 | REFUSING TO WORK/FAILING TO CHECK OUT FOR WORK/ENCOURAGING OR CAUSING OTHERS TO STOP WORK |
| 56 | FAILURE TO OBEY A DIRECT ORDER OF ALDOC OFFICIAL |
| 57 | INSUBORDINATION |
| 59 | DELAYING, HINDERING, OR INTERFERING WITH AN EMPLOYEE IN PERFORMANCE OF HIS/HER DUTY |
| 60 | BRIBERY OR ATTEMPTED BRIBERY |
| 61 | DISRUPTING THE COUNT |
| 62 | INTENTIONALLY CREATING A SECURITY, SAFETY, OR HEALTH HAZARD |
| 63 | DISORDERLY CONDUCT |
| 64 | POSSESSION OF CONTRABAND. INCLUDES POSSESSION OF CURRENCY UNLESS APPROVED BY THE WARDEN |
| 65 | POSSESSION OF UNAUTHORIZED OR UNPRESCRIBED DRUGS, INTOXICANTS, OR |

Annex A to AR 403 (page 2 of 4)

AR 403 January 30, 2003

**ALABAMA DEPARTMENT OF CORRECTIONS**
**VIOLATIONS TABLE AND AUTHORIZED SANCTIONS**
**ANNEX A (Continued)**

PARAPHERNALIA. ALSO, CONSUMPTION OR USE OF, OR UNDER THE INFLUENCE OF ALCOHOL, NARCOTICS, OR OTHER INTOXICANTS.

**PROPERTY VIOLATIONS**

| <u>MAJOR RULE VIOLATION</u> | <u>VIOLATION TYPE</u> |
|---|---|
| 68 | THEFT, DAMAGE, OR DESTRUCTION OF ANOTHER'S PERSONAL PROPERTY |
| 69 | DESTROYING, STEALING, DISPOSING, ALTERING, DAMAGING, OR SELLING STATE PROPERTY |
| 70 | UNAUTHORIZED POSSESSION OF OTHER'S PROPERTY |
| 71 | ARSON |
| 72 | FORGERY |
| 73 | COUNTERFEITING |

**POLICY VIOLATIONS**

| <u>MAJOR RULE VIOLATION</u> | <u>VIOLATION TYPE</u> |
|---|---|
| 78 | FAILURE TO COMPLY WITH THE AGREEMENT AND CONDITIONS OF LEAVE AND PASS |
| 86 | BEING FIRED FROM JOB |

**PERSONAL VIOLATIONS**

| <u>MAJOR RULE VIOLATION</u> | <u>VIOLATION TYPE</u> |
|---|---|
| 90 | CONSUMPTION OR USE OF, OR UNDER THE INFLUENCE OF ALCOHOL, NARCOTICS OR OTHER INTOXICANTS |

**MISCELLANEOUS VIOLATIONS**

| <u>MAJOR RULE VIOLATION</u> | <u>VIOLATION TYPE</u> |
|---|---|
| 91 | CONSPIRACY TO COMMIT A VIOLATION OF DEPARTMENTAL OR INSTITUTIONAL RULES |

Annex A to AR 403 (page 3 of 4)

AR 403 January 30, 2003

**ALABAMA DEPARTMENT OF CORRECTIONS**
**VIOLATIONS TABLE AND AUTHORIZED SANCTIONS**
**ANNEX A (Continued)**

| | |
|---|---|
| 92 | AIDING AND ABETTING ANOTHER TO COMMIT A VIOLATION OF DEPARTMENTAL OR INSTITUTIONAL RULES |
| 93 | VIOLATION OF STATE OR FEDERAL LAW |
| 94 | SOLICITING SEXUAL ACT |
| PV | VIOLATION OF PAROLE (RECOMMENDED BY P&P) |

**WORK RELEASE AND SIR VIOLATIONS**

| MAJOR RULE VIOLATION | VIOLATION TYPE |
|---|---|
| E8 | VIOLATION OF SIR CONTRACT |
| E9 | ABSCONDING FROM SUPERVISION, ABSENT WITHOUT PERMISSION |

NOTE:    Inmates are subject to all Rule Violations (28 thru E9). Rules E1 through E3 (see AR 414) and E8 and E9 (this regulation) are designed primarily to manage/govern behavior of inmates. In addition to punishments authorized for major violations outlined in this Annex, inmates who violate, and are convicted of, any of these rules (28 thru E9) may also be removed from the Work Release or SIR Program.

**AUTHORIZED SANCTIONS**

1.    Loss of a portion or all good time the inmate has earned.

2.    Confinement to Segregation.

3.    Recommend custody review.

4.    Loss of any and all privileges up to 90 days.

Annex A to AR 403 (Page 4 of 4)

AR 403 January 30, 2003

## ALABAMA DEPARTMENT OF CORRECTIONS
## DEFINITIONS AND EXAMPLES OF RULE VIOLATIONS
## ANNEX B

### VIOLATION AGAINST PERSONS

28    <u>HOMICIDE</u> - The death of a human being caused by another person's actions.

29    <u>ASSAULT ON A PERSON (S) ASSOCIATED WITH THE ALDOC</u>- Any willful attempt or threat to inflict injury upon an officer of ALDOC, employee, or other person associated with the ALDOC giving the victim reason to fear or expect immediate bodily harm.

30    <u>ASSAULT ON A PERSON (S) NOT ASSOCIATED WITH ALDOC</u> - See #29 above.

31    <u>ASSAULT ON ANOTHER INMATE</u> - See #28 or #29 above.

32    <u>SEIZING OR HOLDING HOSTAGES IN ANY MANNER</u> - Abducting any individual with the intent to hold him/her for ransom or reward, to use him/her as a shield, or to use him/her as an aid in the commission of a felony or escape.

33    <u>UNLAWFULLY DETAINING ANY PERSON</u> - Holding any person against his/her will, even though the intent to create a hostage situation was not present.

34    <u>FIGHTING WITH A WEAPON</u> - Two or more individuals engaging in a mutual combat with a weapon(s) or a device(s) used as a weapon(s) during which combat the principal aggressor cannot be determined.

35    <u>FIGHTING WITHOUT A WEAPON</u> - Similar to #34 above except that a weapon or device used as a weapon are not present.

36    <u>SEXUAL ASSAULT (FORCIBLE)</u> - See #29 above; assault with the intention to commit the crime of rape or other sexual offense.

37    <u>SEXUAL OFFENSE (NON-FORCIBLE)/SOLICITING</u> - Commission of any sexual act during which both participants act willingly. To include hugging, fondling, caressing, kissing, etc.

38    <u>INDECENT EXPOSURE/EXHIBITIONISM</u> - Exposure to sight of the private parts of the body in a lewd or indecent manner.

39    <u>EXTORTION OR BLACKMAIL</u> - Demanding or attempting to demand, or receiving money or anything of value in return for protection from others in order to avoid bodily harm, or under threat of any kind.

40    <u>ROBBERY</u> - The taking of property from another by the use of force, or the threat of the use of force with the intent to deprive that individual of the property.

41    <u>MAKING FALSE STATEMENTS OR CHARGES</u> –The speaking of slanderous, defamatory, or untrue words tending to prejudice another.

42    <u>GATHERING IN A THREATENING OR INTIMIDATING MANNER</u> - Self-explanatory.

Annex B to AR 403 (Page 1 of 4)

AR 403 January 30, 2003

**ALABAMA DEPARTMENT OF CORRECTIONS**
**DEFINITIONS AND EXAMPLES OF RULE VIOLATIONS**
**ANNEX B (Continued)**

44    THREATS - A communicated intent to do bodily harm to another individual or group by verbal or written expression.

**SECURITY VIOLATIONS**

45    ESCAPE BY FORCE - The departure out of the custody of the ALDOC or other legal agency by a lawfully detained inmate with the intent to avoid confinement by use of constraining power, compulsion, or force.

46    ATTEMPT TO ESCAPE BY FORCE - An endeavor to escape or conspire to escape by force (see #45 above) resulting in recapture prior to leaving state custody or other controlling agency.

47    ESCAPE WITHOUT FORCE - See #45 above, except that there is no use of constraining power, compulsion, or force involved.

48    ATTEMPT TO ESCAPE (WITHOUT FORCE) - See #46 above, except that there is no use of constraining power, compulsion, or force involved.

49    ABSENT WITHOUT LEAVE - Not returning from leave or pass within two hours of the designated time.

50    BEING IN AN UNAUTHORIZED AREA - Also includes being ardent from assigned work area or place of employment and/or being absent from assigned quarters without permission.

51    UNAUTHORIZED POSSESSION OF ESCAPE DEVICE - Having in one's possession any device which could be used to attempt or effect an escape, such as, but not limited to, an instrument to pick a lock, a homemade key, a disguise, or a replica of a human being.

52    UNAUTHORIZED POSSESSION OF A WEAPON OR DEVICE THAT COULD BE USED AS A WEAPON - Any instrument which could be used in a violent manner, such as a device with a pointed and/or sharpened end, or a homemade club, or any item which appears to be a weapon.

53    INCITING TO RIOT OR RIOTING - To incite a riot is to solicit or urge other persons by speech or actions to engage in a conduct which would create a substantial risk to institutional security or public safety, whereas rioting is the action of five or more people engaging in such behavior.

54    REFUSING TO WORK/FAILURE TO CHECK OUT FOR WORK/ENCOURAGING OR CAUSING OTHERS TO STOP WORK - Self-explanatory.

56    FAILURE TO OBEY A DIRECT ORDER OF A ALDOC OFFICIAL - Not complying with an order issued by an ALDOC employee in the performance of duty.

57    INSUBORDINATION - Any act, gesture, remark or statement which obviously reflects disrespect to lawful authority.

Annex B to AR 403 (Page 2 of 4)

AR 403 January 30, 2003

ALABAMA DEPARTMENT OF CORRECTIONS
DEFINITIONS AND EXAMPLES OF RULE VIOLATIONS
ANNEX B (Continued)

59    DELAYING, HINDERING, OR INTERFERING WITH AN EMPLOYEE IN PERFORMANCE OF HIS DUTY - Self-explanatory.

60    BRIBERY OR ATTEMPTED BRIBERY - Offering or conferring upon a public servant anything of value with the intent to affect or influence official action, or receiving anything of value for such a purpose.

61    DISRUPTING THE COUNT - Any action intended to which otherwise effects a miscout of inmates within the institution.

62    INTENTIONALLY CREATING A SECURITY, SAFETY OR HEALTH HAZARD – Creating a situation which could cause serious impairment to the operation of         the institution, harm to individuals, or result in destruction of property.

63    DISORDERLY CONDUCT – Conduct or actions that would create risk, inconvenience, or alarm to normal institutional/facility security or routine operation.

64    POSSESSION OF CONTRABAND - The possession of any item not issued to the inmate by an ALDOC employee, sold in the Canteen Store or approved by the Warden, to include possession of U.S. currency in any amount, or items in excessive amounts.

65    POSSESSION OF UNAUTHORIZED OR UNPRESCRIBED DRUGS, INTOXICANTS, OR PARAPHERNALIA – To include anything used in the administration of drugs or for the manufacture of drugs: for example, a paper bag with traces of glue inside, or the ingredients to make home brew or an intoxicating substance, or storage by the inmate or possession by the inmate of any psychotropic medication unless a specific exception is made by the prescribing physician (the inmate must keep a copy of the physician's authorization with medication at all times).

**PROPERTY VIOLATIONS**

68    THEFT, DAMAGE OR DESTRUCTION OF ANOTHER'S PERSONAL PROPERTY – The taking of the property of another person without threat, force, or coercion, with the intent to permanently deprive the owner of the property.

69    DESTROYING, STEALING, DISPOSING, ALTERING, DAMAGING, OR SELLING STATE PROPERTY - Self-explanatory.

70    UNAUTHORIZED POSSESSION OF OTHER'S PROPERTY - Self-explanatory.

71    ARSON - The malicious burning, either by fire or explosion, of state property or items belonging to the inmate or another person.

72    FORGERY - The altering, possession, or transfer of a written instrument or document with the intent to defraud or deceive.

**ALABAMA DEPARTMENT OF CORRECTIONS**
**DEFINITIONS AND EXAMPLES OF RULE VIOLATIONS**
**ANNEX B (Continued)**

73    COUNTERFEITING - To copy or imitate, without authority, in order to deceive or defraud by passing the copy as the original; for example, altering postage stamps, money orders or other documents.

## POLICY VIOLATIONS

78    FAILURE TO COMPLY WITH THE AGREEMENT AND CONDITIONS OF LEAVE OR PASS - To include travel arrangements of the leave or pass plan.

86    BEING FIRED FROM A JOB - Being released from employment, or assigned job, because of sloppy work, insolent language, or other culpable behavior on the part of the inmate.

## PERSONAL VIOLATIONS

90    CONSUMPTION OR USE OF, OR UNDER THE INFLUENCE OF ALCOHOL, NARCOTICS OR OTHER INTOXICANTS - The use of unauthorized narcotic substance or other intoxicant by sniffing, injection, or orally ingesting.

## MISCELLANEOUS VIOLATIONS

91    CONSPIRACY TO COMMIT A VIOLATION OF DEPARTMENTAL OR INSTITUTIONAL RULES - A combination or confederacy between two or more inmates **or** one or more inmates and one or more free world persons for the purpose of violating same departmental or institutional rule, even though the act is not consummated or carried out.

92    AIDING AND ABETTING ANOTHER TO COMMIT A VIOLATION OF DEPARTMENTAL OR INSTITUTIONAL RULES - To help, assist or facilitate the violation of a departmental or institutional rule by encouragement of counsel as to its commission with words, acts, support, presence, or assistance rendered.

93    VIOLATION OF STATE OR FEDERAL STATUTE - Self-explanatory.

94    SOLICITING SEXUAL ACT - Self-explanatory.

PV    VIOLATION OF PAROLE - Violation to be determined by Pardons and Paroles Officer/Board.

## WORK RELEASE AND SIR VIOLATIONS

E8    VIOLATION OF SIR CONTRACT – Self-explanatory

E9    ABSCONDING FROM SUPERVISION, ABSENT WITHOUT PERMISSION – Self-explanatory

Annex B to AR 403 (Page 4 of 4)

AR 403 January 30, 2003

ALDOC Form 225B

## ALABAMA DEPARTMENT OF CORRECTIONS
## DISCIPLINARY REPORT

1.    Inmate: _____    Custody: _____    AIS _____

2.    Facility: _____

3.    The above inmate is being charged by _____ with a violation of Rule Number _____ specifically _____ from regulation #_____ which occurred on or about _____, 20 _____ at (time) _____ (am/pm), Location: _____. A hearing on this charge will be held after 24 hours from service.

4.    Circumstances of the violation(s) are as follows: _____

    _____

    _____

    _____                  _____
          Date                                 Arresting Officer/Signature/Rank

5.    I hereby certify that I have personally served a copy of the foregoing upon the above named inmate and I informed inmate of his/her right to present a written or oral statement at the hearing and to present written questions for the witnesses on this the _____ day of _____ 20 _____ , at (time)_____ (am/pm).

    _____        _____
    Serving Officer/Signature/Rank         Inmate's Signature/AIS Number

6.    Witnesses desired? NO _____        YES_____
                        Inmate's Signature              Inmate's Signature

7.    If yes, list

    _____

    _____

8.    Hearing Date_____ Time _____Place _____

9.    Inmate must be present in Hearing Room. If he/she is not present explain in detail on a additional page and attach.

10.    A finding is made that inmate (is/is not) capable of representing him/herself.

                _____
                Signature/Hearing Officer

11.    Plea: _____ Not Guilty _____ Guilty

12.    The Arresting Officer, inmate, and all witnesses were sworn to tell the truth.

                _____
                Signature/Hearing Officer

Annex C to AR 403 (Page 1 of 5)

AR 403 January 30, 2003

Arresting Officers testimony (at the hearing): _____

_____

_____

_____

13.   Inmate's Testimony:_____

_____

_____

_____

Witness: _____    Substance of Testimony:_____

_____

_____

Witness: _____    Substance of Testimony:_____

_____

_____

Witness: _____    Substance of Testimony: _____

_____

_____

14.    The inmate was allowed to submit written questions to all witnesses. Copy of questions and answers are attached.

_____
Signature/Hearing Officer

15.    The following witnesses were not called - Reason not called

1. _____    _____

2. _____    _____

3. _____    _____

16.    After hearing all testimony, the Hearing Officer makes the following findings of fact: (Be Specific) the Hearing Officer finds that:

_____

_____

_____

_____

17.    Basis for Findings of Fact:

_____

_____

_____

_____

18.    Hearing Officer's Decision: _____ Guilty _____ Not Guilty

19.    Recommendation of Hearing Officer:

_____

_____

_____

_____

_____          _____
Signature/Hearing Officer                    Type Name and Title

20.    Warden's Action – Date

       Approved
_____

       Disapproved
_____

       Other (Specify)
_____

_____

21.    Reason if more than 30 calendar days delay in action._____

_____

22.  I hereby certify that a completed copy of the foregoing Disciplinary Report was served on the
above named inmate on this _____ day of _____ 20____ , at
time)_____(am/pm).


_____         _____
  Signature/Serving Officer/Title              Inmate's Signature/AIS Number

Annex C to AR 403 (Page 3 of 5)

AR 403 January 30, 2003

**ALABAMA DEPARTMENT OF CORRECTIONS**
**DISCIPLINARY REPORT (OPTIONAL)**

Inmate Name/AIS Number _____    Incident Report No._____

Facility: _____

CONTINUED ARRESTING OFFICER'S (AO) STATEMENT AND/OR QUESTIONS BY HEARING
OFFICER (QBHO) TO ARRESTING OFFICER: _____

_____

_____

_____

_____

CONTINUED INMATE'S STATEMENT AND/OR QUESTIONS BY HEARING OFFICER (QBHO)
TO INMATE: _____

_____

_____

_____

_____

CONTINUED WITNESS TESTIMONY (QBHO): _____

_____

_____

_____

_____

CONTINUED FINDINGS OF FACT: _____

_____

_____

_____

_____

Annex C to AR 403 (Page 4 of 5)

AR 403 January 30, 2003

CONTINUED BASIS FOR FINDINGS OF FACT: _____

_____

_____

_____

_____

CONTINUED HEARING OFFICER'S RECOMMENDATIONS: _____

_____

_____

_____

_____

OTHER: _____

_____

_____

_____

_____

Annex C to AR 403 (Page 5 of 5)

ALDOC Form 225D

AR 403 January 30, 2003

**ALABAMA DEPARTMENT OF CORRECTIONS**
**NOTICE OF POSTPONEMENT OF DISCIPLINARY HEARING**

Inmate's Name: _____ AIS #: _____

Violation(s): _____

Notice is hereby given that your Disciplinary hearing which was scheduled on _____ has

been rescheduled for _____

Reason for rescheduling: _____

_____

_____                    _____
Inmate's Signature                                      Serving Officer's Signature

**ALABAMA DEPARTMENT OF CORRECTIONS**
**NOTICE OF POSTPONEMENT OF DISCIPLINARY HEARING**

Inmate's Name: _____ AIS: _____

Violation (s): _____

Notice is hereby given that your Disciplinary hearing which was scheduled on _____ has been

rescheduled for _____

Reason for rescheduling: _____

_____

_____                    _____
Inmate's Signature                                      Serving Officer's Signature

Annex D to AR 403

AR 403 January 30, 2003



# State of Alabama
# Alabama Department of Corrections

301 S. Ripley Street
P. O. Box 301501
Montgomery, AL 36130



**BOB RILEY**
GOVERNOR

**DONAL CAMPBELL**
COMMISSIONER

November 10, 2004

ADMINISTRATIVE REGULATION                    OPR:  CLASSIFICATION
NUMBER                              400

## CLASSIFICATION OF INMATES

**I.    GENERAL**

This Alabama Department of Corrections (ADOC) Administrative Regulation (AR) establishes responsibilities, policies, and procedures for initial inmate classification at Tutwiler Prison for Women (Tutwiler) and the Receiving and Classification Center (RCC) and for reclassification at all institutions.

**II.    POLICY**

Inmates incarcerated in the ADOC will be classified into groups by security level, custody, and program needs as defined in the ADOC Classification Manual. The ADOC Classification Manual is the document of direction in all matters of inmate classification and procedures thereunto.

**III.    DEFINITION(S) AND ACRONYM(S)**

A.    Central Review Board (CRB):  The CRB is composed of Central Classification Division Classification Supervisors who review the security level, custody, and placement recommendations for inmates made by institutional classification specialists and supervisors, for approval, denial, or amendment.

B.    Receiving and Classification Center (RCC):  The Receiving and Classification Center for male inmate is located at the Kilby Correctional Institution, for female inmates it is located at Tutwiler Prison for Women.

C.    Job Board:  The institutional Job Board will be composed of the Warden or designee, ICS Officer, Job Supervisors, Classification Personnel where available, and other personnel as required to be designated by the institutional standard operating procedures (SOPs) to consider initial inmate job assignments, inmate job changes, and any other institutional inmate assignment as deemed appropriate. The Warden is ultimately responsible for all decisions made by the institutional Job Board.

D.    ICS:  Inmate Control System



EXHIBIT
C

E.   Institutional Classification Committee:  This committee reviews the security level, custody, and placement of inmates at the institution and submits their recommendations to the CRB. This committee is made up of a Classification Specialist, a Warden or designee, and a Psychologist Associate if a Psychologist is unavailable.

F.   Classification:  The process of sorting inmates into groups by security level, custody, and program needs using interviews, tests, scoring instruments, and behavior records as well as official court documents and reports from police and other criminal justice agencies.

G.   Reclassification:  The process of periodically reviewing the progress of inmates to determine what, if any, revisions should be made to the placement of inmates within a particular group as to security level, custody, and/or program.

H.   Security Levels:  The rating assigned to the various institutions and placement options within the ADOC and to inmates through classification procedures for the purpose of placement within the ADOC.

I.   Custody Levels:  A level of supervision required for an inmate at the institution, within the ADOC, where the inmate is confined. An inmate can be assigned a custody level of maximum, close, medium, minimum-in, minimum-out, or community.

## IV.   RESPONSIBILITIES

A.   The Deputy Commissioner of Operations is responsible for the classification function.

B.   The Director of Classification is responsible for:

1.   Implementing and evaluating plans and programs for classification.

2.   Reviewing and drafting classification regulations.

3.   Implementing policy and procedures.

4.   Supervising Central Review Board (CRB).

5.   Advising institutional classification staff.

6.   Developing and updating the classification manual.

C.   The Assistant Director of Classification is responsible for assisting the Director of Classification at both the central and institutional offices.

D.   The CRB is responsible for reviewing and determining the final action to be taken

AR 400 - November 10, 2004

on recommendations for institutional security levels, custody levels, program needs, and assignment of inmates as recommended by the institutional classification committee.

E.    The responsibilities of the Warden or designee to the classification committee include input to classification decision-making based upon the offender's behavior which might affect custody and security level.

## V.    <u>PROCEDURES</u>

A.    Initial Receiving and Central Classification at RCC and Tutwiler:

1.    The institutional Classification Supervisor is responsible for the coordination of the reception, admission, and processing of inmates received at RCC and Tutwiler and for the ongoing classification of inmates.

2.    The classification committee, headed by the classification specialist or supervisor, is responsible for providing orientation, scheduling interviews, processing procedures, data compilation and entry, and recommendations consistent with the Classification Manual.

3.    The Psychologist or Psychologist Associate are responsible for the following:

a.    Performing psychometric evaluation of inmates.

b.    Conducting interviews as appropriate.

c.    Assembling relevant information to the inmate's probable adjustment.

d.    Providing recommendations for assignment and treatment.

e.    Serving as a member of the institutional classification committee.

B.    Institutional Reclassifications:

1.    The Classification Supervisor, in accordance with the Classification Manual shall:

a.    Implement the classification system as set forth in the Classification Manual.

b.    Supervise the institutional classification staff.

2.    The Classification Specialist is the chairperson for the institutional reclassification committee and shall:

AR 400 – November 10, 2004

      a.     Schedule annual reclassification and other reclassification (progress review) dates.

      b.     Obtain and verify all of the information used in the progress reviews.

      c.     Provide inmates with the information regarding all classification matters.

      d.     Providing recommendations for assignment and treatment.

      e.     Serving as a member of the institutional classification committee.

3.     Reasons for reclassification prior to the annual date include, but are not limited to:

      a.     The receipt of new information or circumstances which may warrant a change in custody level or institution assignment (such as new convictions or detainers).

      b.     The inmate has completed a recommended program and requires updated recommendations.

      c.     The Warden directs review of the inmate's status for administrative purposes.

      d.     The inmate's current disciplinary conviction record suggests the need for increased supervision.

## VI.   DISPOSITION

Any forms will be disposed of and retained according to the Departmental Records Disposition Authority (RDA).

## VII.   FORMS

The forms prescribed in this regulation may be found in the ADOC Classification Manual.

## VIII.   SUPERCEDES

This regulation supercedes AR 400, dated April 10, 1985, and AR 401, dated April 3, 1985, and all changes.

## IX.   PERFORMANCE

A.    Code of Alabama, 1975, Section 14-1-1

AR 400 – November 10, 2004

B.    ADOC Classification Manual

_Donal Campbell_

Donal Campbell, Commissioner